TIMOTHY BARDONI v KIM

NANCY BARDONI v KIM

Docket Nos. 76111, 76333. Submitted November 6, 1984, at Detroit.
    Decided April 22, 1986. Leave to appeal applied for.

Richard Bardoni, a mental patient of defendant Dr. Soon K. Kim,
    a psychiatrist, murdered his brother, Robert Bardoni, and his
    mother, Catherine Bardoni. Patricia Capps, individually and as
    personal representative of the estate of Catherine Bardoni, and
    Timothy Bardoni brought an action against Dr. Kim and others
    in the Wayne Circuit Court. Nancy Bardoni, personal represen-
    tative of the estate of Robert Bardoni, brought a separate
    action in the Wayne Circuit Court against Dr. Kim and others.
    The claims against the others were dismissed. The plaintiffs
    claimed that Dr. Kim negligently failed to diagnose Richard
    Bardoni as dangerous to members of his family and failed to
    warn them of the potential danger. The court, Robert J. Co-
    lombo, J., granted summary judgment for Dr. Kim in each
    action, holding that, as a matter of law, the victims were not
    readily identifiable. Timothy Bardoni was subsequently substi-
    tuted as personal representative of the estate of Catherine
    Bardoni. Plaintiffs appealed in both cases and the cases were
    consolidated by the Court of Appeals. *Held:*

    1. A psychiatrist, when he determines or, pursuant to the
    standard of care of his profession, should determine that his
    patient poses a serious danger of violence to a readily identifia-
    ble third person, has a duty to use reasonable care to protect
    that third person.

    2. A plaintiff, in an action by a third person against a
    psychiatrist for injuries inflicted by the psychiatrist's patient,

REFERENCES

Am Jur 2d, Negligence §§ 32 *et seq.,* 474 *et seq.*

Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 228 *et seq.*

Am Jur 2d, Summary Judgment §§ 26 *et seq.*

Liability of one treating mentally afflicted patient for failure to
    warn or protect third persons threatened by patient. 83 ALR3d
    1201.

See also the annotations in the ALR3d/4th Quick Index under
    Negligence; Summary Judgment.

who alleges that the psychiatrist should have known of the existence and identity of the target of his patient's violence must establish that the target was, at least extrinsically, identified or readily identifiable and that the defendant psychiatrist, according to the standards of his profession, should have known that specific person was the target of the patient's serious threat of violence.

3. The court correctly found that Richard Bardoni's mother, Catherine Bardoni, was not a readily identifiable victim.

4. The court erred in holding, as a matter of law, that Richard Bardoni's brother, Robert Bardoni, was not a readily identifiable victim and that, consequently, Dr. Kim had no duty to take reasonable care to protect him from Richard Bardoni's violence.

Affirmed in part and reversed in part.

1. JUDGMENTS — SUMMARY JUDGMENT — ISSUE OF MATERIAL FACT — COURT RULES.

A motion for summary judgment on the basis that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law should be denied unless it is impossible for the opposing party to support its claim or defense because of some deficiency which cannot be overcome; in deciding whether or not to grant the motion, the trial court should consider the available documentary evidence, including affidavits, pleadings, depositions and admissions (GCR 1963, 117.2[3], 117.3).

2. NEGLIGENCE — PSYCHIATRISTS — DUTY — THIRD PERSONS.

A psychiatrist, when he determines or, pursuant to the standard of care of his profession, should determine that his patient poses a serious danger of violence to a readily identifiable third person, has a duty to use reasonable care to protect that third person; the existence of the psychiatrist's duty to the third person is a question of law for the court absent the existence of material issues of fact pertinent to these determinations.

3. NEGLIGENCE — PSYCHIATRISTS — THIRD PERSONS.

A plaintiff, in an action by a third person against a psychiatrist for injuries inflicted by the psychiatrist's patient, who alleges that the psychiatrist should have known of the existence and identity of the target of his patient's violence must establish that the target was, at least extrinsically, identified or readily identifiable and that the defendant psychiatrist, according to the standards of his profession, should have known that the specific person was the target of the patient's serious threat of violence.

4. NEGLIGENCE — DUTY.

> The question of the existence of a duty is generally one of law, but disputed issues which ultimately bear on the question of duty are questions for the factfinder and even if the underlying evidentiary facts are not in dispute, when the inferences to be drawn from these facts are such that reasonable persons could differ, there exists a material and ultimate question of fact which must be resolved by the factfinder.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Norman D. Tucker),* for plaintiffs.

*Coticchio, Zotter & Sullivan, P.C.* (by *Timothy J. Sullivan* and *Ronald A. Muresan),* for defendant.

Before: GRIBBS, P.J., and D. E. HOLBROOK, JR., and N. J. LAMBROS,* JJ.

PER CURIAM. Plaintiffs appeal the trial court's orders granting defendant Dr. Soon K. Kim's motions for summary judgment pursuant to GCR 1963, 117.2(3), now MCR 2.116(C)(10). Plaintiffs brought suit against Dr. Kim for the deaths of Catherine and Robert Bardoni, the mother and brother of Richard Bardoni, Dr. Kim's patient. Plaintiffs claimed that Dr. Kim negligently failed to diagnose Richard Bardoni as dangerous to members of his family and failed to warn them of Bardoni's potential dangerousness. The trial court held that defendant did not owe plaintiffs' decedents a duty to warn because, as a matter of law, they were not readily identifiable victims, and granted summary judgment for defendant. Plaintiffs appeal as of right. Their appeals were consolidated by this Court. We affirm in part and reverse in part.

## BACKGROUND

Medical records and depositional testimony es-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tablished the following facts which are not in dispute.

On February 24, 1978, Richard Bardoni came under the care and supervision of Dr. Kim, a psychiatrist. Bardoni was initially referred to Dr. Kim for a social security disability evaluation. Bardoni had been psychotic for at least ten years and was previously under psychiatric care. From his initial evaluation, Dr. Kim classified Bardoni as a paranoid schizophrenic. Because paranoid schizophrenics can become dangerous to themselves or others, Dr. Kim told his patient's wife, Evelyn Bardoni, to contact him immediately if her husband showed any signs of violence or if she thought he could no longer control himself. The major treatment at this point was psychotropic drugs.

Between March 10, 1978, and October 25, 1978, Dr. Kim saw Richard Bardoni on a total of about nine occasions. The sessions lasted between thirty and sixty minutes and Dr. Kim recorded his impressions after each session. Dr. Kim's notes indicated that his patient was highly nervous, anxious, unable to function properly, and delusional, with the delusions centering primarily on his former employer. Bardoni had been fired as a school teacher and he believed that the school system had "attacked his character". He also believed that the school administrator had mental problems. Evelyn Bardoni also informed Dr. Kim that her husband thought someone was out to get him.

During the course of treatment under Dr. Kim, Richard Bardoni often refused to take medication prescribed and in the summer of 1978 broke off treatment altogether. Evelyn Bardoni indicated that her husband stopped seeing Dr. Kim during the summer because, in her opinion, his condition had improved significantly.

On September 15, 1978, Richard Bardoni left home and traveled to Ohio. He was taken into custody by Ohio police and transported to a local hospital after he repeatedly told the officers he wanted to commit suicide. The Toledo Mental Health Center records indicated that Bardoni was brought there in a psychotic state. During his four-day stay at the center, the staff's notes recorded its impression that Bardoni was potentially dangerous and showed signs of aggressive behavior. The records also indicated that Bardoni told the staff that he had recently found out that his wife had been poisoning him and that she had been dating his older brother, Robert Bardoni. A progress note on September 18, 1978, indicated that Bardoni stated that his family was not safe and that somebody was going to hurt them and that he had a great deal of guilt towards the things he had done to his family and others. The center classified Bardoni as a possible threat to himself or others. Dr. Kim did not recall whether or not he received a copy of these Ohio records, but recalled that he had spoken with someone at the center regarding his patient. The Toledo Health Center records indicated that Dr. Kim had been contacted and that Richard Bardoni had been put on a waiting list for an available bed in a private hospital.

After Richard Bardoni was discharged from the Toledo Mental Health Center, Dr. Kim attempted to have him placed in a hospital in Michigan, but Bardoni refused to go voluntarily, and his wife refused to sign commitment papers because she did not feel that he was dangerous. Upon Richard Bardoni's return from Ohio, Dr. Kim noted that Bardoni was having somatic delusions and that he believed his blood was being poisoned. Dr. Kim testified that, upon inquiry into who Bardoni thought was poisoning him, Bardoni indicated it

might be the school system where he had been employed or air pollution. After the Ohio incident, Dr. Kim saw Bardoni only two more times, the last meeting being on October 25, 1978. Richard Bardoni failed to show up for any further appointments.

At no time during his sessions with Richard Bardoni did Dr. Kim ever note any signs of violent behavior. Evelyn Bardoni informed Dr. Kim that she did not think that her husband was dangerous. Evelyn Bardoni did indicate in her deposition that her husband had expressed a desire to kill his brother on several occasions. Although Dr. Kim had requested that she inform him if she felt her husband was dangerous, she had never passed this information on to Dr. Kim, nor did she think Dr. Kim was aware of this fact.

On January 14, 1979, Richard Bardoni assaulted his wife, and murdered his brother, Robert Bardoni, and his mother, Catherine Bardoni, before being captured by police.

Separate suits arising from the deaths of Robert and Catherine Bardoni were commenced in Wayne County Circuit Court. The complaints alleged that Dr. Kim failed to properly diagnose Richard Bardoni and failed to warn members of the Bardoni family who were foreseeable victims of Richard Bardoni's violence.

In both suits Dr. Kim filed motions for summary judgment after discovery. Dr. Kim asserted that Richard Bardoni showed no signs of violent behavior and that plaintiffs' decedents could not be considered readily identifiable victims to whom Dr. Kim owed any duty to warn.

Plaintiffs responded with the affidavits of psychiatrist Dr. Bruce Danto, which stated that Dr. Kim had failed to exercise the appropriate standard of

care of a psychiatrist and that, if he had done so, plaintiffs' decedents would have been readily identifiable as persons endangered by Richard Bardoni.

The trial court ruled as a matter of law in both cases that plaintiffs' decedents were not readily identifiable victims as required by *Davis v Lhim,* 124 Mich App 291; 335 NW2d 481 (1983), remanded on other grounds 422 Mich 875 (1985), on rem 147 Mich App 8; 382 NW2d 195 (1985), and granted defendant Dr. Kim's motions for summary judgment pursuant to GCR 1963, 117.2(3).

## DISCUSSION

A motion for summary judgment brought pursuant to GCR 1963, 117.2(3), now MCR 2.116(C)(10), has the limited function of determining whether or not material issues of fact exist. *Goldman v Loubella Extendables,* 91 Mich App 212, 217; 283 NW2d 695 (1979), lv den 407 Mich 901 (1979). It should be granted only when there are no material issues of fact and the court may determine, as a matter of law, the appropriate disposition of the claim. *Reeder v Hammond,* 125 Mich App 223, 227; 336 NW2d 3 (1983). Thus the motion should not be granted unless it is impossible for the opposing party to support its claim or defense because of some deficiency which cannot be overcome. *Rizzo v Kretschmer,* 389 Mich 363, 371; 207 NW2d 316 (1973). In deciding whether or not to grant the motion, the trial court must consider the available documentary evidence, including affidavits, pleadings, depositions and admissions. GCR 1963, 117.3; *Rizzo, supra,* p 373.

When a psychiatrist determines or, pursuant to the standard of care of his profession, should determine that his patient poses a serious danger

of violence to a readily identifiable third person,[1] the psychiatrist has a duty to use reasonable care to protect that individual against such danger.[2] *Davis,* 124 Mich App 301-305, citing *Thompson v Alameda County,* 27 Cal 3d 741; 167 Cal Rptr 70; 614 P2d 728 (1980), with approval. Absent the existence of material issues of fact pertinent to these determinations, the existence of the psychiatrist's duty to the third person is a question of law for the court. See *Moning v Alfono,* 400 Mich 425, 436-439; 254 NW2d 759 (1977);[3] see also *Leedy v Hartnett,* 510 F Supp 1125, 1130 (MD Pa, 1981) aff'd 676 F2d 686 (CA 3, 1982) (interpreting the law of Pennsylvania).

Before further discussing a psychiatrist's duty to protect a readily identifiable person endangered by his patient, we distinguish this type of situation from the situation in this Court's recent decision in *Duvall v Goldin,* 139 Mich App 342; 362 NW2d 275 (1984). See also *Welke v Kuzilla,* 144 Mich App 245; 375 NW2d 403 (1985). *Duvall* dealt with the question of whether a physician could be held liable to a third party for his negligence in treat-

[1] Other jurisdictions have rejected the readily identifiable limitation and couch their determinations of duty in terms of reasonable foreseeability. See, e.g., *Lipari v Sears, Roebuck & Co,* 497 F Supp 185, 194-195 (D Neb, 1980) (construing Nebraska law).

[2] The discharge of the duty owed by a psychiatrist to a person endangered by his patient does not necessarily require warnings to that person. Rather, the psychiatrist must take reasonable steps to protect the endangered person. *Davis,* 124 Mich App 305. These steps can involve warnings to that person, warnings to the custodian of the patient, commitment of the patient, etc. In the instant case, however, plaintiffs specifically claimed that Dr. Kim breached his alleged duty to decedents by failing to warn them of the threat of danger posed by his patient.

[3] Although duty is essentially a question of law, *Moning,* 400 Mich 436-439, when the existence of a duty is dependent on the resolution of factual issues, the factfinder may determine the duty question. See n 11; *Davis,* 124 Mich App 307 (where a jury determined the duty issue); see also *McIntosh v Milano,* 168 NJ Super 466, 489-490; 403 A2d 500 (1979).

ment (malpractice) of a patient who, as a result of his negligently treated medical condition, injured the third party in a motor vehicle accident. Although the physician in *Duvall* was also a psychiatrist, the Court in *Duvall* distinguished the case before it from cases involving a psychiatrist's duty to a third party where the third party is endangered by the patient's violent or assaultive conduct stemming from the patient's underlying psychological problems. *Duvall, supra,* pp 349-351. We agree with this distinction and limit our decision to situations involving the duty of a psychiatrist[4] to third parties endangered by his psychiatric patient's violent or assaultive conduct which arises from the patient's psychological problems.

In maintaining a claim such as the one at bar,[5] plaintiff must be able to establish a duty on the part of the defendant psychiatrist running to the injured third party. To do so plaintiff must be able to show not only that (1) the defendant psychiatrist knew or, according to the standards of his profession, should have known that his patient posed a serious threat of danger to others, but also that (2) the psychiatrist knew or should have

---

[4] Since our opinion is factually limited to a situation involving the liability of a psychiatrist to persons endangered by his patient, we express no opinion as to whether a similar duty is imposed on psychologists, counselors or other therapists.

[5] We point out that, when an action is brought against a psychiatrist based on allegations that the psychiatrist failed to properly diagnose his patient as dangerous to others or failed to ascertain that his patient was dangerous specifically to the injured third person and, as a result, the psychiatrist failed to take reasonable steps to protect that person, the action is piggybacked on a claim of malpractice. See *Welke v Kuzilla,* 140 Mich App 658, 676-680; 365 NW2d 205 (1985). (BRONSON, J., dissenting). However, when it is established that the defendant psychiatrist actually knew of the danger and the target but failed to take any action, the claim against the psychiatrist will be based on his failure to warn or take other reasonable steps to protect the endangered person, i.e., negligence outside malpractice.

known that his patient was dangerous specifically to the injured third party.[6]

In the instant case the parties on appeal do not dispute that Richard Bardoni posed a serious threat of danger to others, or that defendant Dr. Kim knew or, according to the standards of his profession, should have known that his patient posed a serious threat of danger to others. Nor do plaintiffs contend that Dr. Kim actually knew that

---

[6] The determination of whether plaintiff has established or can establish at trial a duty on the part of the defendant psychiatrist does not necessarily require the assistance of an expert opinion. See *Mavroudis v Superior Court for the County of San Mateo,* 102 Cal App 3d 594, 604-605; 162 Cal Rptr 724 (1980). When plaintiff can establish through the defendant psychiatrist's records, testimony, or other evidence that the psychiatrist actually *knew* that his patient posed a serious danger to a particular target, plaintiff need not establish the standard of care of defendant's profession nor rely on expert opinions or produce additional facts regarding external indicia of the patient's dangerousness to an identifiable person since a duty to the endangered person would have arisen by virtue of the psychiatrist's knowledge. However, when there is no evidence that the defendant psychiatrist actually knew of his patient's propensity for violence and the object of his aggression, and plaintiff relies on what the psychiatrist *should have known* according to the standards of his profession, the resolution of the question of what, according to the standards of his profession, the psychiatrist should have known may require the assistance of expert affidavits or testimony. See *Mavroudis,* 102 Cal App 3d 604-605.

Moreover, in determining the question of duty on a motion for summary judgment brought pursuant to MCR 2.116(C)(10), the trial court can consider all documentation presented by the plaintiff, not merely the records of the treating psychiatrist. The records of a grossly negligent psychiatrist, who did not act within the standards of his profession and failed to determine that the plaintiff posed any serious threat of danger to others, might be devoid of any indication that the patient was dangerous and that he was dangerous to a particular person. Plaintiff, however, cannot simply assert that had defendant psychiatrist asked the appropriate questions, the psychiatrist would have determined that his patient posed a serious threat of danger to others and that by asking the appropriate questions he would have been able to ascertain the target of his patient's aggression. See *Doyle v United States,* 530 F Supp 1278, 1289 (CD Cal, 1982). Plaintiff must present the trial court with a sufficient basis via affidavit, testimony, or other documentation for the court to find that plaintiff can or will be able to establish from these external indicia (e.g., hospital records indicating threats to kill victim) that the defendant psychiatrist should have known that his patient was dangerous to a readily identifiable person.

Richard Bardoni had focused his aggression on decedents. Instead, plaintiffs' appeal, which contests the trial court's ruling that Dr. Kim did not owe the decedents a duty to warn because the decedents were not readily identifiable victims to whom such a duty could be owed, focuses on what Dr. Kim should have known with respect to the decedents as targets of his patient's violence. Plaintiffs claim that the decedents were identified or readily identifiable persons endangered by Richard Bardoni, that Dr. Kim *should have known* that decedents were specific targets of his patient's violence, and that, therefore, Dr. Kim owed decedents a duty to warn.

This is the first time that our Court has considered whether the existence of a psychiatrist's duty to third persons can be based on an allegation that the psychiatrist should have known of the target of his patient's violence. Our review of the case law of other jurisdictions reveals that those cases establishing a psychiatrist's duty to protect third persons endangered by his patient involved situations where the existence of a target of the patient's violence was actually known by the psychiatrist and the target was identified or readily identifiable by the psychiatrist. See, e.g., *Tarasoff v Regents of University of California,* 17 Cal 3d 425, 431; 131 Cal Rptr 14; 551 P2d 334 (1976); see also *Furr v Spring Grove State Hospital,* 53 Md App 474, 487; 454 A2d 414 (1983); *Hedlund v Superior Court of Orange County,* 34 Cal 3d 695, 709-710; 194 Cal Rptr 805; 669 P2d 41 (1983) (Mosk, J., dissenting); *Lipari v Sears, Roebuck & Co,* 497 F Supp 185, 194-195 (D Neb, 1980) (construing Nebraska law). The question in this case, however, is whether defendant psychiatrist, in accordance with the standards of his profession, *should have been aware* of the existence of a particular target

of his patient's aggression and the identity of the target.

The existence of a psychiatrist's duty to protect an endangered person is easily determined when there is an awareness on the part of the psychiatrist that the patient is focusing his aggression on a particular person. The question is then simply whether the target was identified or readily identifiable by the psychiatrist. However, if a duty to take reasonable steps to protect a third person is limited only to those victims which are actually known to the psychiatrist, see *Hedlund, supra,* (Mosk, J., dissenting); *Vu v Singer Co,* 706 F2d 1027, 1029 (CA 9, 1983), cert den 464 US 938 (1983); *Doyle v United States,* 530 F Supp 1278, 1289 (CD Cal, 1982); *Hook v Southern California Permanente Medical Group,* 107 Cal App 3d 435, 443-444; 165 Cal Rptr 741 (1980), an extremely negligent psychiatrist may not ascertain that the patient is even dangerous or that the patient is dangerous to anyone in particular. For example: a psychiatric hospital's records of a patient indicate that the patient has violently focused his aggression on a named or particular person (see, e.g., *Davis,* 124 Mich App 306) but the treating psychiatrist fails to read the records and is not apprised of this fact. Thus the target of the violence is identified or readily identifiable, but the defendant psychiatrist is not even aware that there exists a particular target of his patient's aggression. The relevant determination then becomes whether the psychiatrist should have ascertained, by acting in accordance with the standards of his profession, e.g., by reading the hospital records, that there existed a target of his patient's aggression and the identity of the target. Thus, whether the treating psychiatrist actually knows of a target and whether that target is actually identified or read-

ily identifiable by the psychiatrist is not always the appropriate focus in determining the extent of a psychiatrist's duty to persons endangered by his patient.[7]

We therefore, find that, when a plaintiff claims that a defendant psychiatrist *should have known* of the existence and identity of the target of his patient's violence, the plaintiff must be able to establish (a) that the target of the patient's violence was, at least extrinsically, identified or readily identifiable, *and* (b) that the defendant psychiatrist, according to the standards of his profession, should have known that that specific person was the target of his patient's serious threat of violence. Thus the relevant two-step inquiry in the instant case is (a) whether the decedents were identified or readily identifiable targets of Richard Bardoni's violence, and, if so, (b) whether Dr. Kim should have known that the targets of his patient's serious threat of violence were these identified or readily identifiable victims.

Turning first to the question of whether or not the decedents were readily identifiable victims, we point out that in determining on a motion for summary judgment whether or not a plaintiff can establish that a person was a readily identifiable target of a psychiatric patient's violence, the trial court can consider all testimony and documentation factually supporting plaintiff's allegation.

[7] For example, what if, even before addressing the readily identifiable person issue, plaintiff asserts that defendant psychiatrist breached the standards of his profession by failing to ascertain that his patient posed a serious threat of danger to others? How can the psychiatrist know of a specific target of his patient's violence if he has failed to even diagnose his patient as dangerous to others? Since our Court, as well as other jurisdictions, has extended a duty to protect or warn to situations where the psychiatrist knows or should have known of the danger posed by his patient, we must also extend the duty to specific persons whom the psychiatrist knows or should have known were endangered.

Such supporting proofs can include but are not limited to the patient's threats directed toward the person made to that person or to others, violent actions toward that person, the patient's violent fantasies with respect to that person, and hospital's and physicians' records, including the defendant psychiatrist's records. The information presented in support of the allegation that the injured third party was an identified or readily identifiable person need not have been known by defendant psychiatrist since the initial question is whether the victim was at least extrinsically readily identifiable, later followed by a determination of whether or not the psychiatrist knew or should have known his patient was dangerous to that readily identifiable person. If only the information known by a defendant psychiatrist and noted in his records was to be considered in determining whether or not an injured third party was a readily identifiable target of the patient's violence, as we noted earlier, the records of a defendant psychiatrist whose diagnosis and treatment fell far below the standards of his profession might be completely devoid of any indication of dangerousness of the patient and any target of his violence. See footnote 6., *supra.*

After considering the record before us, we find that the trial court correctly found as a matter of law that Richard Bardoni's mother, Catherine Bardoni, was not a readily identifiable victim. However, the court erred in finding as a matter of law that Richard Bardoni's brother, Robert Bardoni, was not a readily identifiable victim and, consequently, that Dr. Kim had no duty to take reasonable care to protect him from Richard Bardoni's violence.

Plaintiffs made no showing that they could establish that Richard Bardoni's mother, Catherine Bardoni, was a readily identifiable person endan-

gered by Richard Bardoni. There was no evidence presented that Bardoni made any threats to his mother or made any threats against her to any other person, including Dr. Kim. Plaintiffs provided no documentation indicating that Richard Bardoni ever exhibited any hostility or took any violent actions toward his mother until the day of the fatal attack. Plaintiffs did submit a psychiatrist's affidavit stating that, in the psychiatrist's opinion, Bardoni's mother was a readily identifiable person within the scope of foreseeable danger. However, the affidavit's conclusionary language and its failure to assert even a single underlying fact supporting the psychiatrist's conclusion rendered the affidavit insufficient for purposes of GCR 1963, 117.2(3).[8] *Goldman,* 91 Mich App 217; *Remes v Duby (After remand),* 87 Mich App 534, 537; 274 NW2d 64 (1978), lv den 406 Mich 986 (1979).

Since we find that plaintiffs failed to make any initial showing supporting their allegation that Catherine Bardoni was a readily identifiable target of her son's violence, we also find that, on these undisputed facts, or, more appropriately, lack of facts, the trial court did not err in finding that Catherine Bardoni was not a readily identifiable victim as a matter of law. The court thus properly granted Dr. Kim's motion for summary judgment on the suit brought by the estate and children of Catherine Bardoni.

[8] The affidavit merely stated:

1. I previously reviewed the medical records and depositions in the within matter and have advised counsel for the Plaintiff that I would be willing to testify that there were deviations from acceptable psychiatric care and treatment which resulted in the death of Plaintiff-decedents herein including Catherine Bardoni.

2. It is my opinion that Catherine Bardoni, the mother of the patient in question, was a readily, identifiable person within the scope of foreseeable danger as a result of her son's paranoid schizophrenia.

With respect to the status of Richard Bardoni's brother, Robert Bardoni, as a readily identifiable victim of Richard Bardoni's violence, Dr. Kim's records and his affidavit and deposition testimony indicated that Richard Bardoni never exhibited any hostility specifically towards his brother. However, plaintiff presented the deposition testimony of Richard Bardoni's wife, Evelyn Bardoni, who indicated that, during Richard Bardoni's treatment by Dr. Kim, Bardoni believed his brother was involved in a plot against him, and harbored ill feelings against his brother because he believed he was responsible for giving him a hernia in 1972. However, she never informed Dr. Kim of these facts.[9] She further testified that, between September of 1978 and January of 1979, her husband had talked to her and other persons about killing his brother.[10] The Toledo Mental Health Center records presented by plaintiff also indicated that Richard Bardoni believed that his family was not safe and that someone was going to hurt them.

[9] We reiterate that the resolution of the question of whether a victim was a readily identifiable target does not turn on the information known to the defendant psychiatrist. See text of our opinion following footnote 7. The fact that Evelyn Bardoni did not inform Dr. Kim of these facts is pertinent to the issue of whether Dr. Kim should have known that his patient, Richard Bardoni, was dangerous to Robert Bardoni.

We also point out that if Dr. Kim were to establish that Robert Bardoni, as well as Evelyn Bardoni, was aware of Richard Bardoni's threats against him, a duty to warn might not arise, see In re Estate of Votteler, 327 NW2d 759 (Iowa, 1982), or, alternatively, a failure to warn might not·constitute a proximate cause of Richard Bardoni's demise.

[10] These threats occurred after Richard Bardoni initially discontinued treatment with Dr. Kim in 1978. However, Dr. Kim briefly resumed care or treatment of Richard Bardoni subsequent to Bardoni's release from the Toledo Mental Health Center in September of 1978. Thus, although the discontinuation of treatment prior to the threats with only a brief resumption of care of Richard Bardoni may weaken plaintiffs' argument that Dr. Kim should have known of these threats, there still remains the question of what Dr. Kim should have known during his initial treatment and upon resumption of care of Richard Bardoni.

The records also indicated that Bardoni believed that his brother was dating his wife, who was poisoning him, and Evelyn Bardoni testified that on the way back from Toledo Mental Health Center her husband told her that he thought his brother was involved in poisoning him. On these facts, particularly with respect to the specific threats directed at Robert Bardoni, we find that the trial court erred in finding, as a matter of law, that Robert Bardoni was not a readily identifiable victim.

Thus, the next question is whether plaintiff established or could have established that Dr. Kim, according to the standards of his profession, should have known that his patient was dangerous specifically to his brother, Robert Bardoni. Dr. Kim stated in his affidavit and deposition that his patient's paranoia was directed at the school system, that his patient never exhibited any hostility toward or threatened decedents and that he was never informed of any such hostility or threats. Based on these facts, Dr. Kim's position was that he was under no duty to protect the decedents (i.e., he should not have known that decedents were targets of his patient's violence). However, plaintiff's psychiatric expert stated in a second affidavit that, had Dr. Kim performed in accordance with the standard of care of his profession, he would have determined that Robert Bardoni was a specific individual who was in danger from Richard Bardoni. The expert supported this conclusion by stating that Dr. Kim, although recognizing the danger posed by his patient, improperly relied on Evelyn Bardoni's statements that she felt her husband was not dangerous and so failed to specifically inquire into the nature of his patient's delusions. According to plaintiff's expert, Dr. Kim, who diagnosed Richard Bardoni as a paranoid schizo-

phrenic, failed to more specifically inquire as to the nature of his patient's paranoia and, had he done so, his inquiry would have revealed who the patient thought was attacking him (i.e., his brother), and that the patient was laying the groundwork to attack those persons. Plaintiff's expert further stated that Dr. Kim should have known that his patient's refusal of treatment and medication would render him a prime prospect for another psychotic break that very possibly would have resulted in an attack on those who he thought were attacking him.

Based on this expert's supporting affidavit, as well as the Toledo Mental Health Center records indicating that Richard Bardoni thought his family was in danger, we find that plaintiff in the suit brought on behalf of Robert Bardoni's estate made an initial showing that she might be able to establish at trial that Dr. Kim should have known that Richard Bardoni was dangerous specifically to his brother, Robert Bardoni. This showing, although recognizably slim, was sufficient to at least survive defendant Dr. Kim's motion for summary judgment. On a motion for summary judgment, every inference should be drawn in favor of the opposing party. *Sanders v Clark Oil Refining Corp,* 57 Mich App 687, 691-692; 226 NW2d 695 (1975).

Although the question of duty is generally one of law, disputed issues which ultimately bear on the question of duty, such as, in this case, what the defendant psychiatrist, according to the standards of his profession, should have known, are questions for the factfinder.[11] Furthermore, even if

[11] When the existence of a duty is dependent upon the resolution of factual issues, these issues must be submitted to the factfinder. In a jury trial the issue should be submitted to the jury with appropriate instructions as to the legal conclusions (on duty) to be drawn as the issue is determined either way. *Farwell v Keaton,* 396 Mich 281, 286-

the underlying evidentiary facts are not, as in the instant case, in dispute, when the inferences to be drawn from these facts (i.e., what a defendant should have known) are such that reasonable persons could differ, there exists a material and ultimate question of fact which must be resolved by the factfinder.[12] See Bashara, *The Elusive Summary Judgment Rule: Sifting Through the Maze,* 3 Det Col L R 397, 419 (1976).

Thus, we find that summary judgment for defendant Dr. Kim on the suit brought on behalf of Robert Bardoni's estate should not have been granted on the basis that Dr. Kim, as a matter of law, owed no duty to Robert Bardoni.

Affirmed in part and reversed in part.

---

287; 240 NW2d 217 (1976); *Davis v Thornton,* 384 Mich 138, 142; 180 NW2d 11 (1970); *Bonin v Gralewicz,* 378 Mich 521, 526-527; 146 NW2d 647 (1966), and accompanying note; see also *Crowther v Ross Chemical & Mfg Co,* 42 Mich App 426, 431; 202 NW2d 577, 580 (1972).

[12] The factfinder may ultimately find that Dr. Kim, according to the standards of his profession, should not have known that his patient posed a serious threat of danger to Robert Bardoni and therefore had no duty to protect Robert Bardoni. It may, for example, find that the Toledo Mental Health Center records indicating that Richard Bardoni was dangerous to his family and the expert testimony that Dr. Kim, according to the standards of his profession, should not have relied on Evelyn Bardoni's statements and should have independently ascertained that his patient posed a serious threat of danger to his brother were outweighed by the fact that Dr. Kim saw Richard Bardoni only on about nine occasions, that Evelyn Bardoni withheld information from Dr. Kim and that, upon inquiry from Dr. Kim as to who was poisoning him, Richard Bardoni did not mention his brother. Moreover, the existence of a duty does not resolve the question of liability. Even if the factfinder finds the existence of a duty, it may also find the duty was discharged by warnings to the patient's wife or attempts to commit the patient, or may find that the lack of warnings to decedents was not a proximate cause of their deaths.