JACKSON v NEW CENTER COMMUNITY MENTAL HEALTH
SERVICES

Docket No. 85648. Submitted October 21, 1986, at Detroit. Decided
February 18, 1987. Leave to appeal applied for.

Vinzell Jackson and Herman Bohler brought an action in the
Wayne Circuit Court against New Center Community Health
Services and Raghavendar R. Kilaru, M.D., a New Center
employee, alleging negligence regarding defendants' care of
their patient, Maurice Austin, who wounded Jackson and Boh-
ler in a random shooting spree. Plaintiff Herman Bohler died
while the action was pending and Herman A. Bohler, Jr., as
personal representative of the estate of decedent, Herman
Bohler, was substituted as a plaintiff. The trial court, John H.
Gillis, Jr., J., granted defendants' motion for summary disposi-
tion, finding that New Center was a governmental agency and
ruling that defendants were immune from tort liability under
the governmental immunity act. The trial court subsequently
denied plaintiffs' motion for a rehearing and plaintiffs ap-
pealed.

The Court of Appeals *held:*

1. New Center's contract with the Detroit-Wayne County
Mental Health Board, a Wayne County agency, to provide
outpatient mental health services in Detroit does not alter the
fact that New Center is a private corporation which cannot
claim immunity under the governmental immunity act. The
trial court therefore erred in ruling that defendants were
immune from liability.

2. However, defendants were entitled to summary disposition
since they owed no actionable legal duty to plaintiff Jackson or
plaintiff Bohler's decedent. Both men were hapless victims of

REFERENCES

Am Jur 2d, Municipal, School, and State Tort Liability § 92.

Am Jur 2d, Negligence § 63.5 (Supp).

Liability of one treating mentally afflicted patient for failure to
warn or protect third persons threatened by patient. 83 ALR3d
1201.

Right of contractor with federal, state, or local public body to
latter's immunity from tort liability. 9 ALR3d 382.

Austin's random shooting spree and, thus, were not readily identifiable potential victims of Austin's violent behavior whom defendants could have protected against Austin's conduct. Affirmed.

1. GOVERNMENTAL IMMUNITY — MENTAL HEALTH — PRIVATE MENTAL HEALTH FACILITY.

   A private corporation which is under contract with a county mental health board to provide outpatient mental health services is not, by virtue of such contract, a governmental agency which may claim immunity from tort liability under the governmental immunity act (MCL 691.1401; MSA 3.996[101]).

2. NEGLIGENCE — PSYCHIATRISTS — DUTY TO THIRD PERSONS.

   A psychiatrist, when he determines or, pursuant to the standard of care of his profession, should determine that his patient poses a serious danger of violence to a readily identifiable person, has a duty to use reasonable care to protect that person against such danger.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Sharon D. Blackmon*), for plaintiffs.

*Barris, Sott, Denn & Driker* (by *Sharon M. Woods* and *James S. Fontichiaro*), for New Center Community Mental Health Services.

*Siemion, Huckabay, Bodary, Padilla & Morganti* (by *Raymond W. Morganti*), for Raghavendar R. Kilaru, M.D.

Before: D. F. WALSH, P.J., and M. J. KELLY and C. W. SIMON,* JJ.

D. F. WALSH, P.J. Plaintiffs, Vinzell Jackson and Herman A. Bohler, Jr., personal representative of the estate of Herman Bohler, deceased, appeal from an order denying their motion for rehearing. The order reaffirmed the circuit court's entry of summary disposition in favor of defendants, New Center Community Mental Health Services and

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

Raghavendar R. Kilaru, M.D. The court had found that New Center was a governmental agency and that New Center and its employee, defendant Kilaru, were immune from liability to plaintiffs for negligence. We disagree with the lower court's analysis of governmental immunity. Because we are persuaded that defendants were entitled to summary disposition in their favor on another ground, however, we affirm.

I

On October 25, 1980, Herman Bohler and Vinzell Jackson were wounded by Maurice Austin, a former Northville Regional Psychiatric Hospital patient. Alleging negligence,[1] they sued defendant

---

[1] Plaintiffs alleged:

That the Defendants, by and through their agents and employees, were guilty of one or more of the following negligent acts or omissions:

(a) Failing to properly investigate the history of said Maurice Austin so as to accurately determine the degree of danger Mr. Austin presented to others;

(b) Failing to properly monitor the behavior of said Maurice Austin during the time he was under Defendants' care and treatment so as to accurately determine the degree of danger Mr. Austin presented to others:

(c) Failing to properly train and/or supervise those employees or agents who did investigate and/or monitor said Maurice Austin's history and behavior so as to accurately determine the degree of danger Mr. Austin presented to others;

(d) Failing to monitor the medication it did prescribe to said Maurice Austin, which the Defendants knew or should have known was necessary to minimize the violent and bizarre behavior Mr. Austin had demonstrated prior to April 7, 1980, and during the time he was under the care and treatment of the Defendants;

(e) Failing to take adequate and reasonable steps to insure that said Maurice Austin did take the medication it did prescribe for him;

(f) Failing to warn the public, in general, and Plaintiff's Decedent Herman Bohler and Plaintiff Vinzell Jackson, in particular, that said Maurice Austin was violent and a threat to their well being;

New Center, to which Austin had been referred for outpatient services upon discharge from Northville, and defendant Raghavendar R. Kilaru, M.D., Austin's treating physician at New Center.[2] Plaintiffs and Austin were strangers to each other prior to Austin's October 25, 1980, assaults.

The circuit court granted summary disposition to defendants. Finding that defendant New Center was "one hundred percent funded by government funds," the court ruled that New Center was a government agency and therefore immune from liability. The court ruled that defendant Kilaru, "an agent of the government," was also immune. Plaintiffs' motion for rehearing was denied, the court stating that defendant New Center was immune "because it's a mental health facility" and that defendant Kilaru was immune "because he's an employee of the mental health facility."[3]

II

GOVERNMENTAL IMMUNITY

A

Section 1 of the governmental immunity act defines "governmental agency" and related terms as follows:

(g) Failing to properly diagnose, and/or treat, and/or prescribe medication to said Maurice Austin so as to minimize Mr. Austin's demonstrated and foreseeable tendencies to commit violence toward others.

Plintiffs also alleged the creation of a nuisance. That theory appears to have been abandoned and, in any event, was merely a partial restatement of plaintiffs' negligence theory.

[2] Suit was commenced in 1982. Plaintiff Herman Bohler died on August 27, 1984. Herman A. Bohler, Jr., was appointed personal representative of his estate and was substituted as party plaintiff.

[3] Defendants filed a third-party complaint against Northville Regional Psychiatric Hospital and D. S. Yoon, M.D., who had treated Mr. Austin at Northville. Summary disposition was granted to the third-party defendants. That order is not challenged on appeal.

(a) "Municipal corporation" means any city, village, township or charter township, or any combination thereof, when acting jointly.

(b) "Political subdivision" means any municipal corporation, county, township, charter township, school district, port district, or metropolitan district, or any combination thereof, when acting jointly, and any district or authority formed by 1 or more political subdivisions.

(c) "State" means the state of Michigan and its agencies, departments, and commissions, and shall include every public university and college of the state, whether established as a constitutional corporation or otherwise.

(d) "Governmental agency" means the state, political subdivisions, and municipal corporations as herein defined. [MCL 691.1401; MSA 3.996(101). See *Hyde v University of Michigan Bd of Regents*, 426 Mich 223, 251-252; 393 NW2d 847 (1986).]

In *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 591; 363 NW2d 641 (1984), the Supreme Court held that all state and local governmental agencies are immune from tort liability for injuries arising out of the exercise or discharge of a nonproprietary, governmental function.[4]

Among the entities recognized as governmental agencies in *Ross* were the Department of Mental Health, Hawthorn Center (a state mental health facility for emotionally disturbed children), and Ypsilanti Regional Psychiatric Hospital (a state mental hospital). 420 Mich 641-647.

In support of the disparate treatment of public and private tortfeasors, the Supreme Court cited the conclusions of the California Law Commission's study of sovereign and governmental immunity:

[4] A "governmental function" is an activity which is expressly or impliedly mandated or authorized by constitution, statute or other law. 420 Mich 591, 620.

"The problems involved in drawing standards for governmental liability and governmental immunity are of immense difficulty. Government cannot merely be liable as private persons are for public entities are fundamentally different from private persons. Private persons do not make laws. Private persons do not issue and revoke licenses to engage in various professions and occupations. Private persons do not quarantine sick persons and do not commit mentally disturbed persons to involuntary confinement. Private persons do not prosecute and incarcerate violators of the law or administer prison systems. Only public entities are required to build and maintain thousands of miles of streets, sidewalks and highways. Unlike many private persons, a public entity often cannot reduce its risk of potential liability by refusing to engage in a particular activity, for government must continue to govern and is required to furnish services that cannot be adequately provided by any other agency. Moreover, in our system of government, decision-making has been allocated among three branches of government—legislative, executive and judicial—and in many cases decisions made by the legislative and executive branches should not be subject to review in tort suits for damages, for this would take the ultimate decision-making authority away from those who are responsible politically for making the decisions." 4 California Law Revision Comm Reports, Recommendations & Studies, p 810 (1963). [420 Mich 618-619.]

In its discussion of the inadequacies of the various definitions of "governmental function" which had been proposed, the Court observed:

Some activities which a governmental agency is required by law to undertake and provide to the public, and which have consistently been afforded immunity from tort liability, have common private sector counterparts, e.g., public schools and state mental health facilities. [420 Mich 616.]

The Court recognized that particular public projects or activities for which a governmental agency is statutorily responsible may be performed by the private sector. 420 Mich 617.

B

Under the Michigan Mental Health Code, MCL 330.1001 *et seq.;* MSA 14.800(1) *et seq.*, the Department of Mental Health is directed to endeavor to ensure that adequate and appropriate mental health services are available to all Michigan citizens. MCL 330.1116; MSA 14.800(116). The department is authorized and directed to provide, directly or through contractual arrangement, services related to the treatment and care of the mentally ill; such services may be on a residential or nonresidential basis. MCL 330.1116(b), (d) and (j); MSA 14.800(116)(b), (d) and (j). See also *Hyde v University of Michigan Bd of Regents, supra,* pp 247-251.

County community mental health programs are governed by chapter 2 of the Mental Health Code. MCL 330.1200 *et seq.;* MSA 14.800(200) *et seq.* The Department of Mental Health is directed to "administer the provisions of chapter 2 so as to provide and maintain an adequate and appropriate system of county community mental health services throughout the state"; the department's objective in this regard is to shift from the state to a county the primary responsibility for the delivery of mental health services to the citizens of the county. MCL 330.1116(e); MSA 14.800(116)(e). Funding of county community mental health programs is shared by the county and state, with allowance for federal and private funds. MCL 300.1300 *et seq.;* MSA 14.800(300) *et seq.* The purpose of a county community mental health

program is to provide a range of mental health services for persons in the county; minimum services, which can include outpatient services for the mentally ill, are designated by the Department of Mental Health. MCL 330.1206, 330.1208(e); MSA 14.800(206), 14.800(208)(e).[5]

A county electing to establish a county community mental health program must establish a community mental health board. MCL 330.1212 *et seq.;* MSA 14.800(212) *et seq.* Board members may not include employees of the Department of Mental Health program, or employees or representatives of an agency having a contractual relationship with the county community mental health program. MCL 330.1222(3); MSA 14.800(222)(3). The board's powers and duties include the examination and evaluation of the county's mental health needs and the public and nonpublic services necessary to meet those needs, submission of the county community mental health program's annual budget to the Department of Mental Health, and approval and authorization of all contracts for the providing of services. MCL 300.1226; MSA 14.800(226). The board may enter into contracts for the purchase of mental health services with private or public agencies, including state facili-

[5] See 1984 AACS, R 330.2005:

A community mental health board shall ensure that the following minimum types and scopes of mental health services are provided to all age groups, either directly by the board, by contract, or by formal agreement with public or private agencies or individuals:
  (a) Twenty-four-hour intervention services.
  (b) Prevention services.
  (c) Outpatient services.
  (d) Aftercare services.
  (e) Day program and activity services.
  (f) Public information services.
  (g) Inpatient services.

ties. MCL 330.1228; MSA 14.800(228). OAG 1981-1982, No 6022, p 514 (January 7, 1982).

A county community mental health program established under chapter 2 of the Mental Health Code is an official county agency. MCL 330.1204; MSA 14.800(204). Employees of the program are county employees. *Applebaum v Dep't of Public Health,* 123 Mich App 208, 211; 333 NW2d 226 (1983), OAG, 1977-1978, No 5269, p 362 (February 23, 1978).

C

New Center is a nonprofit Michigan corporation which provides outpatient mental health services. Its purpose, as described in its articles of incorporation, is

> [t]o deliver comprehensive community mental health services to the Central Detroit Catchment Area in accordance with standards set by appropriate county, state and federal agencies, and pursuant thereto, to receive funds, engage in research and training, to develop ancillary services and to serve as a vehicle of communications between interested parties, all pursuant to Act 54, PA 1963.[6]

The articles of incorporation describe New Center's general financing plan as "Grants from Detroit—Wayne County Mental Health Board and United States Department of Health, Education and Welfare."[7] The board of directors, as identified in the articles of incorporation, consists of thirty-seven members.

---

6 See now 1974 PA 258, the Mental Health Code.

7 Defendants' assertain that 99.5 percent of New Center's budget is publicly funded, the balance coming from insurers and financially able clients, is not disputed.

Wayne County has elected to establish a county community mental health program. The Detroit—Wayne County Mental Health Program is an official agency of Wayne County; employees of the program are Wayne County employees. MCL 330.1204, MSA 14.800(204). See OAG, 1977-1978, No 5269, *supra,* p 363, n 1. The Detroit—Wayne County Mental Health Board is vested with the authority to contract with private agencies to provide mental health services in the county. MCL 330.1226, 300.1228; MSA 14.800(226), 14.800(228). Pursuant to that authority, the board has contracted with New Center to provide outpatient mental health services in Detroit.

### D

Public mental health facilities are immune from tort liability when engaged in a governmental function. *Ross, supra; Canon v Bernstein,* 144 Mich App 604; 375 NW2d 773 (1985), lv gtd 425 Mich 851 (1986).

New Center itself does not satisfy the definition of governmental agency set forth in the governmental immunity act. MCL 691.1401(d); MSA 3.996(101)(d). We find unpersuasive New Center's attempt to escape tort liability by virtue of its relationship with an official county agency.

In support of its claim to governmental agency status, New Center notes that it is a "publicly funded, non-profit, non-stock Michigan corporation, whose purpose is to perform a governmental function by providing outpatient mental health services" in Detroit. New Center further asserts that it was "created pursuant to and is part of the County Community Mental Health Services program, an official county agency."

New Center's argument confuses the issues of

governmental agency status and governmental function. A private entity's performance of a governmental function does not confer governmental agency status on that entity. As noted in *Ross, supra,* p 616, mental health services, albeit required of a governmental agency, are commonly provided by private facilities. The Mental Health Code expressly contemplates the participation of both public and private mental health facilities in state and county community mental health programs.

Notwithstanding its performance of a "governmental function" and its reliance on public funding, New Center retains its identity as a nongovernmental entity. Its employees are not county employees. It retains its separate corporate identity and is governed by its own board of directors. Except as it has voluntarily obligated itself by contract, New Center is not required to provide services or to remain in existence. While it may have been created in response to the recognition of mental health needs in Detroit, New Center's creation was not mandated by law.

We are persuaded of no reason to treat a private entity as a governmental agency merely because that entity contracts with a governmental agency to provide services which the agency is authorized or mandated to provide. We hold that New Center is not a governmental agency. Neither New Center nor its employee defendant Kilaru is immune from liability under *Ross, supra.*

III

DUTY

Defendants argue that, assuming they are not protected from liability by governmental immu-

nity, they owed no duty to Austin's victims under the circumstances of this case. We agree.[8]

In a negligence action, the court assesses competing policy considerations and determines as a matter of law whether the defendant owes an actionable legal duty to the plaintiff. *Friedman v Dozorc,* 412 Mich 1, 22; 312 NW2d 585 (1981); *Moning v Alfono,* 400 Mich 425, 436-439; 254 NW2d 759 (1977).

This Court has held that, when a psychiatrist determines or, pursuant to the standard of care of the profession of psychiatry, should determine that his or her patient poses a serious danger of violence to a readily identifiable person, the psychiatrist has a duty to use reasonable care to protect that person against such danger. *Davis v Lhim,* 124 Mich App 291, 298-305; 335 NW2d 481 (1983), remanded on other grounds 422 Mich 875 (1985), on remand 147 Mich App 8; 382 NW2d 195 (1985), lv gtd 425 Mich 851 (1986); *Bardoni v Kim,* 151 Mich App 169, 175-178; 390 NW2d 218 (1986).

In this case, there is no claim that Jackson or Bohler's decedent were readily identifiable potential victims of Austin's violence. The record conclusively establishes that they were the hapless victims of Austin's random shooting spree.[9]

Plaintiffs do not suggest that New Center's duty is greater than that of its employee, defendant Kilaru. On the authority of *Davis, supra,* therefore, we find that defendants were entitled to summary disposition pursuant to MCR 2.116(C)(10), *Bardoni, supra,* p 175.

---

[8] This issue was raised in the lower court but was never resolved by order of the court.

[9] The record includes the January 16, 1984, depositions of Vinzell Jackson and Herman Bohler, and the March 15, 1985, deposition of defendant Kilaru.

## IV

## CONCLUSION

Defendants were entitled to summary disposition because, as a matter of law, they owed no duty to plaintiff Jackson or to plaintiff Bohler's decedent. Because the court reached the right result, albeit for the wrong reason, we affirm. *Gilbert v Grand Trunk Western R Co,* 95 Mich App 308, 313; 290 NW2d 426 (1980), lv den 410 Mich 854 (1980).

Affirmed.