Jerry L. **EVANS** and Patricia J. Evans, Appellants,

v.

**MOREHEAD CLINIC; Ranjit Sinha, M.D.; Lewis S. Rose and J. Hunter Black, Appellees.**

No. 86–CA–2098–MR.

Court of Appeals of Kentucky.

April 15, 1988.

Robert J. Gehring, William B. Singer, Cincinnati, Ohio, Raymond Bogucki, Florence, for appellants.

P. Joseph Clarke, Danville, for Morehead Clinic, Ranjit Sinha and J. Hunter Black.

Catherine R. Meng, D.G. Lynn, Lexington, for Lewis S. Rose.

Before HOWERTON, C.J., and HOWARD and WEST, JJ.

HOWARD, Judge.

The appellants in this case brought a claim against the appellees for the failure of mental health professionals to warn a shooting victim about a dangerous patient. The Fleming Circuit Court granted the appellees a summary judgment and the appellants appeal.

Appellant Jerry L. Evans was employed as maintenance manager of an apartment complex in Flemingsburg, Kentucky, when he was shot by George Allen on December 1, 1983. After shooting Evans in the right temple and chest with a .22 caliber rifle, Allen used the rifle to commit suicide. Evans suffered partial paralysis, hearing loss, and visual problems as well as other injuries.

The appellee, Dr. Ranjit Sinha, a psychiatrist at the Morehead Clinic, had examined Allen on April 12, 1983. Sinha was told by Allen's daughters that Allen had an increased interest in sex and insisted his 80–year–old wife was having an affair with a younger man. Sinha was also told that Allen had at one point threatened to kill the young man with a firearm but his family had managed to remove the bullets. Allen was diagnosed as suffering from paranoid psychosis, with delusions, and dementia.

Dr. Sinha recommended that Allen be admitted to St. Claire Medical Center for further evaluation of his condition, including any possibility of dangerousness. While in the hospital, Allen received various therapies and Haldol, a tranquilizer. On April 15, 1983, at his son's insistence, Allen was discharged from the hospital. Dr. Sinha released Allen although it was against his medical advice because he thought Allen needed further hospitalization.

It is clear from the record that Dr. Sinha considered George Allen dangerous when he was first seen by Dr. Sinha. That is, Dr. Sinha considered George Allen dangerous to the extent that he would carry out his threats to kill the young man. George Allen was voluntarily committed to the hospital, but Dr. Sinha would have recommended involuntary commitment if Allen had refused. As pointed out above, George Allen was released from the hospital contrary to Dr. Sinha's advice, but Dr. Sinha failed to discuss George Allen's condition with the family physician and failed to warn the appellant. In addition, Dr. Sinha could not remember whether George Allen was still dangerous after his hospitalization was prematurely terminated; Dr. Sinha could only state that he would not have released George Allen if he was still dangerous.

About two months later, on June 21, 1983, Allen was examined at the Morehead Clinic by the appellee, Lewis S. Rose, the staff psychologist, who worked with Dr. Sinha. Mrs. Allen who accompanied her husband, told Rose that Allen still suffered delusions about an affair between her and a younger man. Rose stated that Mrs. Allen did not mention any threats made by her husband against the young man or the fact that Allen had a gun.

Rose made appointments for Allen to see the appellee, Dr. J. Hunter Black, at the Clinic on June 24, 1983, for a possible pneumonia flare-up. Because of his delusions, Rose felt Allen should see Dr. Sinha. Consequently, Rose asked Mrs. Allen to bring her husband to Dr. Sinha's office after he saw Dr. Black. Although Allen saw Dr.

Black on April 24, 1983, he did not see Dr. Sinha. Rose was not sure why he had not made a specific appointment for Allen with Dr. Sinha.

About two months prior to the shooting, Allen confronted the appellant, Jerry Evans, and accused him of having an affair with Mrs. Allen. Evans denied the accusation, telling Allen that he must be mistaken. Later, Evans discussed the incident with Allen's son. Evans stated that Allen's son only told him that Allen "had not been himself lately" but did not mention that Allen had seen a psychiatrist or had been hospitalized or that Allen had ever been considered dangerous.

The appellants filed this action on the grounds that the appellees had a duty to warn appellant of Allen's dangerousness and that the appellees breached that duty. The appellees filed motions for summary judgment in March and April of 1986. The appellees asserted that (1) Kentucky does not recognize a duty of a physician to warn a third party about a patient and (2) the appellant's failure to take precautions when he was alerted to Allen's delusion constituted an intervening cause absolving the appellees of liability. The trial court granted the appellees' motion for summary judgment on July 31, 1986.

The appellants contend that, pursuant to *Restatement (2d) of Torts* § 315 (1965), physicians have a duty to warn foreseeable victims of the violent tendencies of a patient.

*Restatement (2d) of Torts* § 315 provides:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which owes to the other a right of protection.

There are no cases in Kentucky in which § 315 of the *Restatement (2d) of Torts* was employed to derive a duty such as suggested by the appellant. However, a duty of a psychiatrist or psychologist to warn another concerning a dangerous patient has been imposed in other jurisdictions. *Lipari v. Sears, Roebuck & Co.*, 497 F.Supp. 185 (D.Neb.1980); *McIntosh v. Milano*, 168 N.J.Super. 466, 403 A.2d 500 (1979); *Tarasoff v. Regents of the University of California*, 173 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976); *Bardoni v. Kim*, 151 Mich.App. 169, 390 N.W.2d 218 (1986); *Davis v. Lhim*, 124 Mich.App. 291, 335 N.W.2d 481 (1983).

*Tarasoff, supra,* is perhaps the leading case in this area. The parents of a decedent brought suit against a hospital on the grounds the decedent's killer had confided his intentions to kill the decedent to his therapists but the therapist did not warn the decedent. The Court, applying § 315 of the *Restatement* held that:

Once a therapist does in fact determine, or under applicable professional standards reasonably should have determined, that a patient poses a risk of violence to others, he bears a duty to exercise reasonable care to protect the foreseeable victim of that danger. While the discharge of this duty will necessarily vary with the facts of each case, in each instance the adequacy of the therapist's conduct must be measured against the traditional negligence standard of the rendition of reasonable care under the circumstances.

*Id.*, 551 P.2d at 345.

The court reasoned that the "special relation," as discussed in the *Restatement,* of a patient and his doctor or psychotherapist had arisen between the killer and the therapists. This special relation gave rise to the affirmative duties for the benefit of the victim. Therefore, the court concluded the decedent's parents had a cause of action against the therapists for failure to exercise reasonable care to protect the decedent.

In *McIntosh v. Milano, supra,* a wrongful death action was brought against a psychiatrist whose patient murdered the plaintiff's daughter. The patient told the psychiatrist of violent fantasies, ownership of a knife he used to frighten people, and a

possessive relationship with the victim. The patient, however, never made any direct threats concerning the victim. The plaintiff argued that the psychiatrist had sufficient information to determine the patient was dangerous and the victim was the object of his aggression. Therefore, the psychiatrist had a duty to warn the victim about the patient.

The New Jersey court followed *Tarasoff, supra,* and adopted § 315 of the *Restatement.* The court stated that a psychiatrist has a duty to protect an intended or potential victim of his patient when he determines or should determine under the facts and under the standards of his profession, the patient is or may be a danger to the victim. The question of whether or not there was a breach of this duty was an issue of fact and the psychiatrist's motion for summary judgment was precluded.

In *Lipari, supra,* a mental patient fired a weapon into a crowded nightclub. The plaintiff sought to hold the psychiatric hospital treating the patient liable for failing to detain him or involuntarily commit him.

The Court, citing both *Tarasoff, supra,* and *McIntosh, supra,* adopted § 315 of the *Restatement.* The Court reasoned that a psychiatrist or therapist has a duty to third persons when he knows or should know that his patient had dangerous tendencies. This duty not only extends to those third parties specifically known to the therapist but also to those for whom the therapist could have reasonably foreseen an unreasonable risk of harm.

The Court in *Lipari* also stated that a therapist should take whatever precautions necessary under the circumstances to protect a potential victim from an unreasonable risk of harm by a dangerous patient, and these precautions were not limited to a duty to warn. Thus, the precautions under the appropriate circumstances may include a duty to detain.

■ These authorities lead us to conclude that the appellant has a cause of action. The relationship of a psychiatrist or therapist and a patient under § 315 of the *Restatement* is a special relation resulting in duties to third persons. Thus, if the psychiatrist or therapist determined or under the applicable standards of his profession reasonably should have determined that his patient poses a serious risk of violence, the psychiatrist or therapist has a duty of ordinary care to protect a reasonably foreseeable victim of that danger. This foreseeability encompasses victims specifically identified and those readily identifiable. As stated in *Tarasoff, supra,* the manner in which this duty shall be discharged will vary with the facts of each case. The question will be whether the psychiatrist or therapist has exercised reasonable care under the circumstances.

In the case at bar, Dr. Sinha was told that Allen had a delusion that his wife was having an affair with a young man and that Allen had threatened to kill the young man. The record does not indicate Dr. Sinha knew Evans was the young man, but it is clear that Dr. Sinha would not have had any difficulty in finding out the victim's identity by asking Allen's family. Dr. Sinha had questions about Allen's dangerousness and even considered involuntary commitment if Allen had not agreed to hospitalization.

■ It is clear to us that issues of fact remain for determination, i.e., whether the psychiatrist's duty was triggered under the circumstances and, if so, whether Dr. Sinha exercised reasonable care. The same questions exist with regard to the psychologist Rose. However, we can see no basis for individual liability on the part of Dr. J. Hunter Black, who treated Allen at the Clinic for pneumonia.

■ We are not persuaded that KRS 202A.400 has any applicability in this case. KRS 202A.400(1) provides that:

No monetary liability and no cause of action shall arise against any qualified mental health professional for failing to predict, warn of or take precautions to provide protection from a patient's violent behavior, unless the patient has communicated to the qualified mental health professional an actual threat of physical violence against a clearly identified or reasonably identifiable victim, or unless

the patient has communicated an actual threat of some specific violent act.

KRS 202A.400 was not effective until 1986, which is after the date this cause of action accrued. A statute will not be given a retroactive effect unless an intent to do so is clearly expressed in the statute. *Roberts v. Hickman County Fiscal Court*, Ky., 481 S.W.2d 279 (1972). There is no such intent expressed in KRS 202A.400.

As there are factual issues remaining for resolution in this case, summary judgment was prematurely granted in regard to Rose, Dr. Sinha and the Morehead Clinic. The judgment is affirmed as to Dr. Black.

The judgment is affirmed in part and reversed in part for proceedings consistent with this opinion.

WEST, J., concurs.

HOWERTON, C.J., concurs and files separate opinion.

HOWERTON, Chief Judge, concurring.

I agree that the summary judgment was premature. A cause of action was presented, and several factual issues remain to be decided.

The majority opinion generally adopts *Restatement (2d) of Torts* Section 315 and its application in *Tarasoff v. Regents of the University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976). I agree that such law should be applicable in Kentucky. Therefore, if a psychiatrist or psychologist knows that a patient is dangerous and that the patient poses a real risk of harm to a known, or reasonably identifiable, person, the therapist has a duty to prevent the harm by controlling the patient or by warning the intended victim.

We are confronted with several questions. What did Dr. Sinha or Mr. Rose actually know? Was it reasonable for either party to believe that Mr. Allen was dangerous? Was Mr. Allen dangerous when he was released from the medical center? Did either therapist know the identity of the intended victim? Could either party reasonably have discovered Evans' identity? These and similar questions seem to be relevant, factual issues.

There are also relevant questions concerning Evans and his knowledge of the situation. As was written in *Matter of the Estate of Votteler*, 327 N.W.2d 759, 762 (Iowa 1982), "[t]he Tarasoff duty is not open ended. It also supports a conclusion that the duty should not be imposed when the foreseeable victim knows of the danger." The evidence reveals that Allen directly threatened Evans, although Allen's children later attempted to reassure Evans that Allen was not dangerous. Did Evans have reason to take Allen's threat seriously?

The summary judgment must be reversed, and all issues in this case must be considered on remand.