HAWKINS v PEOPLES FEDERAL SAVINGS & LOAN
ASSOCIATION

Docket No. 79404. Submitted October 7, 1985, at Detroit. Decided
October 7, 1986.

Durwood Hawkins brought a wrongful termination of employ-
ment action in Wayne Circuit Court, alleging that termination
of his employment as Vice President/Loan Officer by Peoples
Federal Savings & Loan Association constituted a breach of
contract, was motivated by age discrimination, was malicious
and in bad faith, resulted in interference with employment
opportunities and was based on the failure to objectively evalu-
ate plaintiff's performance. Defendant moved for summary
judgment on the basis that the defendant's bylaws barred the
breach of contract claim, that the termination was motivated
by economic considerations rather than plaintiff's age and that
plaintiff had failed to plead tortious conduct in support of the
bad faith termination, interference with employment opportu-
nities and failure to properly evaluate claims. The trial court,
Michael L. Stacey, J., denied defendant's motion. Defendant
appealed by leave granted.

The Court of Appeals held:

1. The regulations adopted by the Federal Home Loan Bank
Board pursuant to the Home Owners' Loan Act, upon which
the defendant's bylaws are based, have the same preemptive
effect on state law as a federal statute. Since those regulations
clearly prohibit savings and loan associations which are subject
to the regulations from entering into contracts of employment
with their officers that can only be terminated for good cause,
plaintiff's breach of contract claim is barred and summary
judgment on that claim should have been granted.

2. Since the malicious and bad faith termination, interference
with employment opportunities and failure to properly evalu-
ate claims are all premised on the claim that plaintiff was

REFERENCES

Am Jur 2d, Building and Loan Associations §§ 11, 42.
Am Jur 2d, Corporations §§ 1399, 1430, 1443.
See the annotations in the Index to Annotations under Building
and Loan Associations; Discrimination.

promised employment with termination only for good cause, and that premise is contrary to defendant's bylaws and the federal regulations, those claims are preempted by the federal regulations and are barred. Accordingly, the trial court should have granted summary judgment as to these claims.

3. Plaintiff's discharge was not contrary to any strong public policy evidenced by the federal Home Owners' Loan Act.

4. The federal regulation and the defendant's bylaws do not preempt plaintiff's age discrimination claim. Since there is a genuine issue of fact as to that claim, summary judgment as to that claim was properly denied.

Affirmed in part, reversed in part.

1. BUILDING AND LOAN ASSOCIATIONS — FEDERAL HOME LOAN BANK BOARD — HOME OWNERS' LOAN ACT — FEDERAL REGULATIONS — FEDERAL PREEMPTION.

Regulations adopted by the Federal Home Loan Bank Board pursuant to the provisions of the Home Owners' Loan Act have the same preemptive effect on state law as a federal statute (12 USC 1461 et seq.).

2. BUILDING AND LOAN ASSOCIATIONS — EMPLOYMENT — WRONGFUL DISCHARGE — BREACH OF CONTRACT — FEDERAL REGULATIONS — FEDERAL PREEMPTION.

Regulations adopted by the Federal Home Loan Bank Board pursuant to the provisions of the Home Owners' Loan Act have the effect of prohibiting a savings and loan association subject to such regulations from giving a contract of employment to its officers which can be terminated only for good cause; accordingly, a state action for wrongful discharge of an officer of a federally chartered savings and loan association on a breach of contract theory is preempted; wrongful discharge actions based on negligence or lack of good faith are also preempted (12 USC 1461 et seq.; 12 CFR 544.5).

3. BUILDING AND LOAN ASSOCIATIONS — EMPLOYMENT — WRONGFUL DISCHARGE — AGE DISCRIMINATION — FEDERAL PREEMPTION.

An action by an officer of a federally chartered savings and loan association for wrongful discharge of employment based on age discrimination is not preempted by the provisions of the Home Owners' Loan Act.

*Allen, Friedman & O'Toole* (by *Raymond L. Feul* and *Roger J. O'Toole*), for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by

*Robert L. Duty* and *Mark S. Demorest*), for defendant.

Before: R. M. MAHER, P.J., and WAHLS and HOOD, JJ.

PER CURIAM. Defendant appeals by leave granted from the denial of its motion for summary judgment in this employment termination case.

Plaintiff was employed by defendant in April, 1977, as Vice President/Loan Officer. His performance was regularly evaluated as satisfactory and he was annually reappointed by defendant's board of directors. On February 26, 1982, plaintiff received a termination letter stating that his position was being eliminated due to "a change in the direction of our organization with more emphasis being placed on money investment and less on lending."

On September 1, 1982, plaintiff filed a five-count complaint alleging breach of contract, age discrimination, malicious and bad faith termination, interference with employment opportunities and failure to objectively evaluate plaintiff's performance. Defendant responded with a motion for summary judgment pursuant to GCR 1963, 117.2(1) and (3). As to Count I, defendant asserted that its bylaws, mandated by federal law, governed over any express or implied contract and, further, that plaintiff's termination was justified for economic reasons. As to Count II, defendant indicated that a young officer had also been terminated and plaintiff was not replaced, as his termination had been for economic reasons. As to Counts III and IV, defendant contended that plaintiff failed to allege tortious conduct independent of the alleged breach of contract. As to Count V, defendant noted that plaintiff was not terminated for poor performance

and that plaintiff had admitted that the evaluations were not negligently done.

Plaintiff responded to the motion by arguing that defendant's "economic reasons" were pretextual, that defendant should be estopped from relying on its bylaws, and that the termination was contrary to public policy. Plaintiff has asserted that his two predecessors were both laid off after a couple years, before their pensions vested and allegedly for unsatisfactory performance. Acknowledging that in 1981 the mortgage lending market had declined considerably, plaintiff nevertheless has claimed that defendant remained in strong financial condition and did not need to eliminate its chief mortgage loan officer. Plaintiff asserts that defendant's action was unique amongst savings and loan institutions, most of which were in a weaker financial condition then defendant.

On appeal, plaintiff develops the theory of his termination as follows. John Cherpak, defendant's executive vice president, desired to succeed William Kaper as president. Plaintiff's age and experience made him a threat to Cherpak's plans. Therefore, Cherpak and Kaper decided to eliminate plaintiff's position, and the board of directors rubber stamped the decision. Simultaneously, Cherpak, whose area of expertise was money investments, directed defendant in that direction and also assumed responsibility for the loan department. When Kaper died, Cherpak was the obvious choice as successor and became president of defendant.

I

Plaintiff's breach of contract claim is based on *Toussaint v Blue Cross & Blue Shield of Michigan*, 408 Mich 579; 292 NW2d 880 (1980), reh den 409

Mich 1101 (1980). Plaintiff alleges that he was promised that he would not be terminated as long as he did satisfactory work. Plaintiff claims this promise was orally given by Kaper and by Dr. Robert Scott, chairman of the board of directors. Defendant denies that such a promise was made, although Scott has not submitted an affidavit to that affect and Kaper died without being deposed.

More significantly for purposes of this case, a "just cause" or satisfaction contract, if one existed, is at odds with defendant's by-laws, which provided in part:

> 5. *Officers, employees, and agents* Annually at the meeting of the board of directors of the association next following the annual meeting of the members of the association, the board of directors shall elect a president, one or more vice-presidents, a secretary, and a treasurer: . . . *The term of office of all officers shall be one year or until their respective successors are elected and qualified; but any officer may be removed at any time by the board of directors. . . .*
> 7. *Powers of the board—The board of directors shall have power—*
>
> \*   \*   \*
>
> (c) To fix the compensation of directors, officers, and employees; and *to remove any officer or any employee at any time with or without cause.* [Emphasis added.]

The above provisions track 12 CFR 544.5, which require federal mutual associations to operate under such provisions until amended by proper procedure. The regulation adopted by the Federal Home Loan Bank Board is authorized by the Home Owners' Loan Act of 1933, 12 USC 1461 *et seq.,* and has the same pre-emptive effect on state law as a federal statute. *Fidelity Federal Savings*

& *Loan Ass'n v de la Cuesta,* 458 US 141, 153; 102 S Ct 3014; 73 L Ed 2d 664 (1982).

In *Ambro v The American National Bank & Trust Co of Michigan,* 152 Mich App 613; 394 NW2d 46 (1986), this Court considered a similar question with respect to the National Bank Act and concluded that state contract law was preempted.

12 USC 24 sets forth the authority of directors of national banks with regard to employment of bank officers:

"Upon duly making and filing articles of association and an organization certificate *a national banking association* shall become, as from the date of the execution of its organization certificate, a body corporate, and as such, and in the name designated in the organization certificate, it *shall have power*—

\*   \*   \*

"Fifth. To elect or appoint directors, and *by its board of directors to appoint a* president, *vice president,* cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, *dismiss such officers or any of them at pleasure,* and appoint others to fill their places." [Emphasis added.]

This provision has been consistently construed by state and federal courts to preempt state law governing employment relations between a national bank and its officers and to deprive a national bank of the power to employ its officers other than "at pleasure". *Wiskotoni v Michigan National Bank—West,* 716 F2d 378, 387 (CA 6, 1983), citing *Bollow v Federal Reserve Bank of San Francisco,* 650 F2d 1093, 1097, n 3 (CA 9, 1981); *Westervelt v Mohrenstecher,* 76 F 118, 121 (CA 8, 1896); *Kemper v First National Bank in Newton,* 94 Ill App 3d 169; 418 NE2d 819 (1981). See also, *Alfano v First National Bank of Highland,* 111 AD 2d 960; 490 NYS2d 56 (1985). In *McGeehan v Bank*

*of New Hampshire, NA,* 123 NH 83, 86; 455 A2d 1054 (1983), the New Hampshire Supreme Court stated:

"The case law uniformly interprets this section and substantially similar provisions as rendering unenforceable, as against public policy, all contractual provisions which do not allow a national banking association to discharge its officers at will without incurring liability for breach of contract."

We hold that the National Bank Act preempts state law in the area of wrongful discharge and precludes plaintiff from making a *Toussaint*-based claim for damages against the bank. Accordingly, plaintiff's breach of contract claim against the bank must fail. [152 Mich App 617, 618.]

As to Ambro's remaining claims, the Court went on to state:

We then turn to plaintiff's tort claims for negligence and failure to exercise good faith. With respect to the cause of action for negligence, plaintiff states in his complaint:

"16. Defendants, having established the policies and undertaken the obligations owed to plaintiff as terms and conditions of his employment, as previously set forth in this First Amended Complaint, owed to plaintiff a duty to perform such policies and such obligations in a reasonably prudent manner."

With respect to the cause of action for failure to exercise good faith, plaintiff states in his complaint:

"17. Defendants, having established the policies and undertaken the obligations owed to plaintiff as terms and conditions of his employment, as previously set forth in this First Amended Complaint, owed to plaintiff a duty to perform such policies and such obligations in good faith towards plaintiff."

> We held above that the bank could not contract to
> employ its officers other than at the pleasure of
> the bank's board of directors. It follows, therefore,
> that the bank could not assume a duty to perform
> a contract calling for discharge only for causer.
> Accordingly, plaintiff's remaining claims against
> the bank must also fail. The trial court properly
> granted summary judgment in favor of the bank,
> pursuant to GCR 1963, 117.2(1). [152 Mich App
> 618-619.]

The analysis and result of *Ambro* is applicable
here, and accordingly we conclude that defendant
is entitled to judgment as a matter of law on
Counts I, III, IV and V. Plaintiff makes an effort to
salvage Counts I and V by arguing that defendant
should be estopped from raising the federally-man-
dated bylaws as a defense to the alleged contract.
Plaintiff claims that he relied upon oral promises
of security given by Kaper and Scott in deciding to
leave his job in Illinois and return to Michigan to
work for defendant. However, in addition to prov-
ing reliance, plaintiff must also show that enforce-
ment of the promises are necessary to avoid injus-
tice. *Toussaint, supra,* p 649 (RYAN, J., dissenting).
Here, defendant is not retaining a benefit obtained
because of plaintiff's reliance on the promises, so
this is not a case of defendant's being unjustly
enriched. Upon further review of the authority
cited in *Ambro, supra,* we are persuaded that
public policy does not require enforcement of the
alleged bargain.

II

Plaintiff attempts to salvage Count III by charac-
terizing defendant's alleged bad faith as the inten-
tion to contravene public policy. Plaintiff identifies
the violations of public policy as defendant's viola-

tions of the Home Owners' Loan Act of 1933, 12 USC 1461 *et seq.,* the age discrimination in employment act, 29 USC 621 *et seq.,* the federal civil rights act, 42 USC 2000 *et seq.,* and the Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.*

Michigan courts clearly recognize that some grounds for discharging an employee are so contrary to public policy as to be actionable. *Suchodolski v Michigan Consolidated Gas Co,* 412 Mich 692, 695; 316 NW2d 710 (1982). The public policy must be clear. *Clifford v Cactus Drilling Corp,* 419 Mich 356, 367; 353 NW2d 469 (1984) (WILLIAMS, C.J., dissenting); *Suchodolski, supra,* p 696; *Schwartz v Michigan Sugar Co,* 106 Mich App 471, 479; 308 NW2d 459 (1981), lv den 414 Mich 870 (1982).

As to the Home Owners' Loan Act, plaintiff's claim seems to be that his termination jeopardized defendant's proper servicing of small home owners' accounts which the act is intended to protect. We do not find in this claim a sufficiently strong public policy to warrant a civil action for damages.

As to the remaining statutes cited by plaintiff, the violation claimed by plaintiff is age discrimination, which claim is raised in Count II. Pursuant to the statutes, plaintiff has a civil action for damages. See MCL 37.2801; MSA 3.548 (801); *Ledsinger v Burmeister,* 114 Mich App 12; 318 NW2d 558 (1982). Accordingly, plaintiff's Count III does not state a different claim from Count II, to which we now turn our attention.

### III

Defendant acknowledges that the Home Owners' Loan Act does not preempt plaintiff's age discrimination claim. However, defendant claims that plaintiff has offered insufficient proof of age dis-

crimination to create a genuine issue of material fact, so that defendant is entitled to judgment as a matter of law. We disagree.

> The courts are liberal in finding that a "genuine issue" does indeed exist. As Honigman & Hawkins correctly comments, (1) the court "will give the benefit of any reasonable doubt to the opposing party" and (2) "the court must be satisfied that it is impossible for the claim or defense to be supported at trial *because of some deficiency which cannot be overcome."* [*Rizzo v Kretschmer*, 389 Mich 363, 372; 207 NW2d 316 (1973). Emphasis in original.]

Plaintiff must show that his age was a "determining factor" in his dismissal, but it need not be the sole factor. *Gallaway v Chrysler Corp,* 105 Mich App 1; 306 NW2d 368 (1981), lv den 413 Mich 853 (1982). Plaintiff minimally has the circumstantial evidence from which a jury might infer discrimination. On the other hand, defendant's proofs of economic reasons for the dismissal are not so strong as to take that defense away from the jury and allow the court to award summary judgment to defendant.

Affirmed in part and reversed in part. We remand for further proceedings on Count II. The circuit court shall enter an order granting summary judgment for defendant as to Counts I, III, IV and V.