PAUL v PLYMOUTH GENERAL HOSPITAL

Docket Nos. 85475, 88530. Submitted March 3, 1987, at Detroit. Decided June 2, 1987.

Angelique F. Paul, as personal representative of the estate of Ernest Albrooks, brought an action in Wayne Circuit Court against Plymouth General Hospital, Dr. Zack Brown, Dr. M. Z. Zamora, and the estate of Tanecia Merriweather. Plaintiff alleged negligence on the part of defendants hospital and physicians in the fatal shooting of Ernest Albrooks by Tanecia Merriweather, who had been admitted on two separate occasions for emergency medical treatment at Plymouth General Hospital following her attempts at suicide by overdosing on drugs. Dr. Brown, as head of the emergency room, had referred Merriweather to Dr. Zamora on her first admission and Dr. Lee on her second admission for psychiatric treatment, but Merriweather had declined in both instances. Plaintiff stipulated to the dismissal of the estate of Tanecia Merriweather from the lawsuit. The trial court, Lucile A. Watts, J., granted Dr. Zamora's motion for summary disposition, but denied similar motions brought by Plymouth General Hospital and Dr. Brown, who subsequently sought interlocutory appeals. Leave was granted and the appeals were consolidated.

The Court of Appeals *held:*

1. Summary disposition should have been granted in favor of Dr. Brown and the hospital. Plaintiff's negligent discharge claim is clearly unenforceable as a matter of law since Dr. Brown owed no duty to Ernest Albrooks to refrain from discharging Merriweather until treatment was obtained for a mental or emotional condition which Dr. Brown, not being a psychiatrist, was not qualified to diagnose or treat.

2. Dr. Brown did not owe a duty to warn Albrooks of Merriweather's dangerous propensities. There was no special relationship between Dr. Brown and Merriweather as to her

REFERENCES

Am Jur 2d, Hospitals and Asylums §§ 14, 16.5, 19.

Am Jur 2d, Incompetent Persons § 39.

Liability of one releasing institutionalized mental patient for harm he causes. 38 ALR3d 699.

mental or emotional condition which would have given rise to a duty to use reasonable care to protect readily identifiable persons from Merriweather's dangerous propensities, and, even if there were such a duty, Dr. Brown's failure to warn could not have proximately caused Albrooks' death since Albrooks was aware of Merriweather's violent nature.

Reversed.

1. PHYSICIANS AND SURGEONS — PSYCHIATRIC TREATMENT.

An emergency room physician may not compel an individual who attempted suicide to undergo psychiatric treatment as a condition of the individual's discharge where the individual was not involuntarily committed for psychiatric treatment.

2. PHYSICIANS AND SURGEONS — PSYCHIATRIC TREATMENT — DUTY TO WARN — THIRD PERSONS.

An emergency room physician who treated an individual following the individual's unsuccessful suicide attempt owed no duty to another individual who was subsequently murdered by the treated individual to either compel psychiatric treatment prior to discharge or warn the murder victim of the treated individual's propensity for violence where the treated individual was not involuntarily committed for psychiatric treatment, the physician was not a psychiatrist, and the murder victim was aware of the treated individual's violent nature.

*Meklir, Schreier, Nolish & Friedman, P.C.* (by *Lynn M. Foley*), for plaintiff.

*Kaufman & Payton* (by *Heidi Dammers Hudson*), for defendant Plymouth General Hospital.

*Cottichio, Zotter & Sullivan, P.C.* (by *Timothy J. Sullivan*), for defendant Zack Brown.

Before: M. J. KELLY, P.J., and SULLIVAN and P. R. JOSLYN,* JJ.

M. J. KELLY, P.J. Defendants Plymouth General Hospital and Dr. Zack Brown have been granted leave to file this interlocutory appeal from an order denying their motions for summary disposi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tion. Plaintiff stipulated to the dismissal of defendant estate of Tanecia Merriweather and summary disposition was granted in favor of Dr. Zamora, whose motion was heard at the same time the trial court heard the motions filed by defendants-appellants. We hold that summary disposition should also have been granted in favor of Dr. Brown and the hospital under MCR 2.116(C)(10) and we therefore reverse.

Plaintiff filed this complaint as personal representative of the estate of Ernest Albrooks on July 12, 1983. Albrooks had been Tanecia Merriweather's boyfriend and the two had lived together on and off for some time. Distressed by the fact that Albrooks was seeing other women, Merriweather attempted suicide on May 13, 1981. She was admitted to the emergency room at Plymouth General Hospital in a comatose state caused by a drug overdose. Dr. Brown, a general practitioner and head of the emergency room treated Merriweather initially but there is a dispute as to whether he was her attending physician during the remainder of the hospital stay.

Staff psychiatrist, Dr. M. Z. Zamora, was asked to evaluate Merriweather which he did on May 15, 1981. Zamora concluded that Merriweather was unable to cope with her mother and her boyfriend, Ernest Albrooks, and that psychiatric treatment was needed. However, Merriweather was discharged without psychiatric treatment on May 17, 1981.

Following another suicide attempt on July 10, 1981, Merriweather was again admitted to Plymouth General Hospital as the victim of a drug overdose. Dr. Brown approved her admission and was her attending physician during this stay. Merriweather refused to allow or cooperate with blood tests and x-rays ordered for her care and Dr.

Brown noted on her record that she was "very belligerent" when she came out of her coma. Although Dr. Brown recommended psychiatric consultation, Merriweather refused to cooperate with a Dr. Lee, the psychiatrist referred by Dr. Brown, and insisted on being discharged. Brown did not conduct a complete patient history or discuss Merriweather's July overdose with any members of her family. Nor did Brown refer to the May, 1981, psychiatric consultation report of Dr. Zamora.

Merriweather was discharged on July 14, 1981. On July 25, 1981, Merriweather shot and killed Albrooks and herself. Albrooks was aware of the danger posed to him by Merriweather and had taken steps to protect himself by sleeping in a locked room in the basement of their home.

In her complaint, plaintiff alleges that defendants negligently discharged Merriweather when they knew or should have known that she needed psychiatric help. Plaintiff further alleges negligence in defendants' failure to take steps "to protect [the deceased] from any foreseeable danger posed by defendant Merriweather and that defendants knew or should have known that defendant Merriweather did pose a danger to herself as well as others including the deceased." We consider each theory of liability separately.

Even viewing the facts of this case in a light most favorable to the plaintiff, resolving any factual disputes in her favor as we must when reviewing a motion for summary disposition under MCR 2.116(C)(10), *Hawkins v Peoples Federal Savings & Loan Ass'n,* 155 Mich App 237, 246; 399 NW2d 484 (1986), we are persuaded as a matter of law that defendant Brown did not owe Ernest Albrooks a duty to refrain from discharging Merriweather until after she had obtained proper psychiatric treatment. It is not disputed that Dr.

Brown is an emergency room physician and not a psychiatrist. Defendant Merriweather was brought into defendant's emergency room in a comatose state as the result of a drug overdose. Dr. Brown treated her for that condition and released her after she had sufficiently recovered. Plaintiff does not allege that Dr. Brown negligently treated Merriweather's physical condition. Contrast *Duvall v Goldin,* 139 Mich App 342; 362 NW2d 275 (1984), where the defendant physician failed to properly diagnose or treat the patient's epileptic condition and thus contributed to the injuries caused to the plaintiff when the patient lost control of the car she was driving during an epileptic attack. We conclude that plaintiff's negligent discharge theory is clearly unenforceable as a matter of law since defendant Brown owed no duty to Ernest Albrooks to refrain from discharging Merriweather until treatment was obtained for a mental or emotional condition which Dr. Brown was not qualified to diagnose or treat.

Not only is Dr. Brown not a psychiatrist, but Plymouth General Hospital is not a psychiatric facility. Tanecia Merriweather, an adult woman at the time of her treatment, had not been involuntarily committed to either Plymouth General Hospital or any other facility. Plaintiff essentially argues that defendant Brown had a duty to force psychiatric treatment on Merriweather by refusing to discharge her from a general hospital to which she had been admitted for treatment of a physical condition. In *Hinkelman v Borgess Medical Center,* 157 Mich App 314; 403 NW2d 547 (1987), we held that, even where the defendant hospital is a psychiatric facility, neither the facility nor its staff has a duty to compel confinement where the patient's presence is through voluntary commitment.

Whether defendant Brown had a duty to warn

others, including the decedent, of Merriweather's dangerous propensities is a separate, though often related, question. In *Davis v Lhim,* 124 Mich App 291; 335 NW2d 481 (1983), remanded 422 Mich 875 (1985), this Court adopted the reasoning of the California Supreme Court in *Tarasoff v Regents of University of California,* 17 Cal 3d 425; 131 Cal Rptr 14; 551 P2d 334 (1976), and held that psychiatrists have a common-law duty to use reasonable care to protect readily identifiable persons from the dangerous propensities of their patients. This common-law duty arises because of the special relationship which exists between a psychiatrist and the patient.

In the instant case there was no special relationship between Dr. Brown and Merriweather as it related to her mental or emotional condition. During both hospital stays, Merriweather's attending physician referred her for a psychiatric evaluation because of the attempted suicides. Following the evaluation conducted in May of 1981, Dr. Zamora recommended that Merriweather receive psychiatric counseling. Defendant Brown had no control over Merriweather's decision regarding this recommendation and Merriweather obviously chose not to seek treatment. Moreover, Merriweather refused to even cooperate with the psychiatric evaluation that was attempted in July of 1981. Not only was there no special relationship between Dr. Brown and Merriweather as to her mental or emotional condition, there was no such relationship between Merriweather and anyone on the hospital staff which could have led to the discovery of her dangerous propensity. As noted by this Court in *Hinkleman, supra,* defendant did not have sufficient opportunity to evaluate the patient and thus could not have been negligent in failing to discover her tendency toward violence.

Finally, even if we were to assume that Dr. Brown had a duty to warn Ernest Albrooks about the danger Merriweather posed to his safety, we fail to see how Brown's failure to warn could have proximately caused the decedent's injuries. It is undisputed that Albrooks already knew of the threat posed by Merriweather and had acted on that knowledge. See *Hinkelman, supra,* and *Bardoni v Kim,* 151 Mich App 169, 184, n 9; 390 NW2d 218 (1986), lv den 426 Mich 863 (1986).

Reversed.