Brian David MASSEY, a minor, through his Guardian and Conservator Roy O. Yackle, Sr., and Roy O. Yackle, Sr., as Administrator of the Estates of Jean Ann Young Andrews, Tamara J. Massey and Tiffany D. Massey, Plaintiffs,

v.

William F. GRANT, Superintendant of Camp Lehman, Billye J. Turner, Personal Representative of the Estate of Edward Turner, Former Chairman of the Michigan Parole Board, Kay Zeitz, Records Supervisor of the Michigan Department of Corrections, Howard Grossman, Former Member of the Michigan Parole Board, Richard Walbrecq, William Hudson, Jacqueline Moss, Sandra Johnson, and Gloria Richardson, all present members of the Michigan Parole Board, and Keith Lampar, Defendants.

No. G86–874 CA5.

United States District Court,
W.D. Michigan, S.D.

Feb. 19, 1988.

Norman H. Pylman, Gruel, Mills, Nims & Pylman, Grand Rapids, Mich., for plaintiffs.

Ronald W. Emery, Dept. of Atty. Gen., Lansing, Mich., for defendants.

## OPINION OF THE COURT

BELL, District Judge.

In this four-count action for damages, plaintiffs allege the various state employee defendants are liable for injuries inflicted by one David Andrews. Defendants have moved for dismissal, asserting none of the four counts sets forth a claim upon which relief can be granted.

SUMMARY OF FACTS

For purposes of this motion for dismissal under Fed.R.Civ.P. 12(b)(6), the Court accepts as true all well-pled factual allegations in plaintiffs' second amended complaint. According to these allegations, David Andrews was a prisoner in the custody of the Michigan Department of Corrections until he escaped from Camp Lehman

on November 9, 1983. He thereafter made his way to Miami County, Kansas, where he became acquainted with Jean Ann Young Andrews, whom he apparently married,[1] and her children, Tamara, Tiffany and Brian Massey. On July 19, 1984, David Andrews was arrested in Kansas. Informed of his arrest, Michigan officials initiated extradition proceedings so that he could be returned to Michigan and prosecuted for prison escape. To accomplish this, a governor's warrant was issued. Before the warrant was executed, however, it was "unjustifiably and improperly quashed" by defendants. Consequently, David Andrews was released from custody in Kansas. On October 31, 1984, he killed Jean Ann Young Andrews and her daughters Tamara and Tiffany. He abducted and sexually abused her son Brian and was finally apprehended in Port Huron, Michigan on November 2, 1984. Based upon these facts, plaintiffs assert four theories of relief.

COUNT III

■ Count III sets forth a state tort claim cognizable by This Court because of the parties' diversity of citizenship. Plaintiffs allege their injuries were proximately caused by defendant William F. Grant's failure to maintain adequate security at Camp Lehman. This failure, characterized as negligence or gross negligence, allegedly enabled David Andrews to escape to Kansas, where the injuries were inflicted. Defendant Grant contends this claim must be dismissed because plaintiffs have not alleged facts from which it could be inferred that he owed them a duty of protection different from the duty owed to the public generally.

Whether defendant owed plaintiffs an actionable legal duty is a question of law. *Friedman v. Dozorc*, 412 Mich. 1, 22, 312 N.W.2d 585 (1985). The law will hold defendant liable for his negligent conduct only if, because of his relationship with plaintiffs, he is deemed to owe them, in particular, a duty of due care. *Id., Duvall v. Goldin*, 139 Mich.App. 342, 347, 362 N.W.2d 275 (1984). Where the duty of a public official arising from his official authority is for the benefit of the public at large, then his failure to perform it may be redressed only in some form of public prosecution. *Gerneth v. City of Detroit*, 465 F.2d 784, 787 (6th Cir.1972), citing 2 Cooley, Torts (4th Ed.1932), § 300, p. 385. Such a public duty is owed to a specific individual only if performance thereof affects the individual in a manner different in kind from the way it affects the public at large. *Gerneth v. City of Detroit, supra*, 465 F.2d at 787.

Here, defendant Grant's duty to maintain a secure prison camp and to take reasonable measures to prevent prisoners from escaping is a duty owed to the general public and not to plaintiffs in particular. It is analogous to the police officer's duty to preserve the peace, for the breach of which the officer is not liable to any particular individual, but only to the public. See *Maksinczak v. Salliotte*, 140 Mich.App. 537, 364 N.W.2d 737 (1985); *Zavala v. Zinser*, 123 Mich.App. 352, 333 N.W.2d 278 (1983), *aff'd sub nom Ross v. Consumers Power Co.*, 420 Mich. 567, 363 N.W.2d 6410 (1984). The nature of the duty is not such that its performance affected plaintiffs in a manner different in kind than the way it affects the general public. Plaintiffs have not alleged facts from which it could be inferred that they stood in such a relationship to defendant Grant that he owed them, in particular, a duty of reasonable care. In the absence of such a duty, defendant Grant cannot, as a matter of law, be held liable for plaintiffs' injuries under a theory of negligence or gross negligence.[2] Ac-

---

**1.** The complaint does not specifically indicate the nature of the "special relationship" shared by David Andrews and Jean Ann Young Andrews. However, defendants' explanation that they were married has not been challenged and is presumed to be true.

**2.** The existence of a duty owed to plaintiffs is no less essential to plaintiffs' gross negligence theo-

ry than to the negligence theory. The chief difference between the two forms of liability consists in the defendant's greater blameworthiness, owing to the fact that the harm which threatened the plaintiff was not merely foreseeable, but was substantially likely to occur. Allegations which fail to make out a claim for

cordingly, the claim embodied in count III of the complaint must be dismissed.

## COUNTS I and II

In counts I and II, plaintiffs assert all the defendants are liable for their participation in the process whereby the governor's warrant was quashed. The act of quashing the warrant enabling David Andrews' release, is variously described as negligent, grossly negligent, wanton, willful, reckless and deliberately indifferent. Plaintiffs contend defendants owed them a duty to extradite David Andrews to Michigan and require him to finish serving his prison sentence and face prosecution for prison escape. Assuming they had such a duty under law, defendants again raise the question whether they were obligated to discharge such duty for the benefit of plaintiffs in particular. Unless they owed such duty specifically to plaintiffs, they maintain, they cannot be held liable for its breach, regardless of whether the breach is labelled negligent, grossly negligent, reckless or deliberately indifferent.

Obviously, the duty of Department of Corrections personnel and members of the Parole Board to ensure that prison sentences are served in accordance with the law is a duty owed to the general public. Defendants cannot be held liable to a particular individual for breach of such a "public duty." *Maksinczak v. Salliotte, supra; Zavala v. Zinser, supra.*

Plaintiffs contend defendants owed them a somewhat different duty than that owed to the public generally. By virtue of defendants' knowledge (1) of David Andrews' prior criminal history (including sexually assaultive offenses) and (2) of the special relationship which he had recently established with plaintiffs, defendants are alleged to have owed plaintiffs the duty to protect them from, or at least to warn them of, his dangerous propensities.

■ Indeed, Michigan law recognizes an exception to the common law rule that no one has a duty to protect an individual who is endangered by the conduct of another: "Where the actor stands in a special rela-

tionship with either the third-party victim or the person causing the injury, a duty of reasonable care may arise." *Duvall v. Goldin,* 139 Mich.App. 342, 351, 362 N.W.2d 275 (1984), *leave denied* 422 Mich. 976 (1985). See also 2 Restatement Torts, 2d § 315, p. 122. The existence of a "special relationship" is prerequisite to the imposition of a legal duty of reasonable care. Plaintiffs allege they were in a "special relationship" with David Andrews. Yet *this* relationship cannot form the basis for imposition of a duty upon defendants for purposes of plaintiffs' tort claims. Under the test enunciated in *Duvall,* the question is whether *defendants* stood in a special relationship with either the plaintiffs or with David Andrews. No facts having been alleged to support the finding of a special relationship between defendants and plaintiffs, it is clear plaintiffs' tort claims are dependant upon the finding of a special relationship between defendants and David Andrews.

■ Whether corrections officials exercising authority to determine the time of a prisoner's release stand in such a relationship to the prisoner as to owe a duty of care to potential victims of his post-release criminal behavior is a question which does not appear to have been specifically addressed in the Michigan appellate courts. Several analogous cases, however, provide instructive principles.

In *Davis v. Lhim,* 124 Mich.App. 291, 335 N.W.2d 481 (1983), *remanded on other grounds,* 422 Mich. 875, 366 N.W.2d 7 (1985), *on remand* 147 Mich.App. 8, 382 N.W.2d 195 (1985), *leave granted* 425 Mich. 851 (1986), the Court of Appeals established the following rule regarding a psychiatrist's duty:

[W]hen a psychiatrist determines or pursuant to the standard of care of his profession, should determine that his patient poses a serious danger of violence to a readily identifiable person, the psychiatrist has a duty to use reasonable care to protect that individual against such danger.

simple negligence are *a priori* insufficient to

make out a claim for gross negligence.

124 Mich.App. at 305, 335 N.W.2d 481. The court emphasized the duty is owed only to potential victims who are "readily identifiable." This duty is imposed not only upon psychiatrists, but upon psychiatric hospitals and other entities which undertake to render psychological treatment. *Hinkelman v. Borgess Medical Center,* 157 Mich.App. 314, 403 N.W.2d 547 (1987). The rule has been reaffirmed in several recent Court of Appeals decisions. *Paul v. Plymouth General Hospital,* 160 Mich. App. 537, 408 N.W.2d 492 (1987); *Jackson v. New Center Community Mental Health Services,* 158 Mich.App. 25, 36, 404 N.W.2d 688 (1987); *Hinkelman v. Borgess Medical Center, supra; Bolton v. Jones,* 156 Mich. App. 642, 651–652, 401 N.W.2d 894 (1986); *Bardoni v. Kim,* 151 Mich.App. 169, 175–178, 390 N.W.2d 218 (1986), *leave denied* 426 Mich. 862 (1986).

Let it be assumed, for purposes of this motion, that defendants stood in a relationship to David Andrews analogous to that of a psychiatrist to a patient who has exhibited dangerous propensities. Let it further be assumed that defendants quashed the extradition warrant because, in the exercise of their discretion under the circumstances, they determined justice did not require David Andrews' return to Michigan. Let it further be assumed that had they known of reason to believe that David Andrews posed a serious threat of harm to readily identifiable persons, defendants would have been obligated under the law to use reasonable care in protecting or warning such persons. Yet, it remains clear that no facts have been alleged from which it could be inferred that plaintiffs were readily identifiable potential victims. Plaintiffs have alleged defendants had knowledge of their "special relationship" with David Andrews. However, no allegation has been made, no explanation offered, as to why this "familial" relationship should have been viewed, in the exercise of reasonable care, as placing them in a position of greater risk than the general public. There is no allegation, such as that found to be critical in *Davis v. Lhim, supra,* 124 Mich.App. at 306, 335 N.W.2d 481, (where a mental patient killed his mother), that

David Andrews had previously threatened plaintiffs' specifically, and that defendants knew of such threat. In spite of having already twice amended their complaint, plaintiffs simply have not alleged a factual basis upon which to conclude that defendants owed them a duty of reasonable care.

Accordingly, the Court concludes plaintiffs' counts I and II claims—that defendants breached a duty owed them through negligence, gross negligence, wanton, willful and reckless conduct, or deliberate indifference—are facially defective as a matter of law. Plaintiffs have not stated a claim upon which relief can be granted. Defendants are entitled to an order of dismissal under Fed.R.Civ.P. 12(b)(6).

COUNT IV

In count IV of the complaint, plaintiffs allege defendants' failure to extradite David Andrews was a proximate cause of their injuries, constituting a deprivation of life and liberty under color of state law without due process actionable under 42 U.S.C. § 1983. The basis for this claim is found in *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). The Supreme Court expressly declined to rule therein "that a parole officer could never be deemed to 'deprive' someone of life by action taken in connection with the release of a prisoner on parole." 444 U.S. at 285, 100 S.Ct. at 559. Subsequently, several circuit courts have interpreted *Martinez* as suggesting that a duty to protect others from, or warn others of, the dangerous propensities of another "may arise out of special custodial or other relationships created or assumed by the state in respect of particular persons." *Fox v. Custis,* 712 F.2d 84, 88 (4th Cir.1983). Addressing facts very similar to those here alleged, the Sixth Circuit Court recently wrote:

[T]he proper analysis is whether a special relationship exists between the victim and the state or *whether there is some showing that the victim, as distinguished from the public at large, faces a special danger by the parolee's release.* In so holding, we follow other circuits that have held that absent a special relationship between the criminal and

the victim or the victim and the state, no due process violation can occur. *Jones v. Phyfer,* 761 F.2d 642 (11th Cir.1985); *Fox v. Custis,* 712 F.2d 84 (4th Cir.1983); *Humann v. Wilson,* 696 F.2d 783 (10th Cir. 1983); *Bowers v. DeVito,* 686 F.2d 616 (7th Cir.1982).

*Janan v. Trammell,* 785 F.2d 557, 560 (6th Cir.1986). (Emphasis added.)

Here, plaintiffs have alleged they stood in a special relationship with David Andrews, but have not alleged that, or how, such familial relationship placed them, as distinguished from the public at large, in special danger. To use the label "special relationship," without more—without allegations that the relationship created special danger—is insufficient. For only upon the basis of allegations that defendants knew of such special danger could defendants' failure to protect or warn be construed as grossly negligent or deliberately indifferent or as an arbitrary abuse of power establishing a causal connection between such failure and the ultimate harm actually inflicted by another. Absent such a causal connection, there can be no due process violation, because plaintiffs' injuries are too remote a consequence of defendants' actions. *Martinez v. California, supra,* 444 U.S. at 285, 100 S.Ct. at 559; *Carlson v. Conklin,* 813 F.2d 769, 772 (6th Cir. 1987).[3]

Thus, plaintiffs have failed to allege facts essential to maintenance of their claim that they have been denied due process. Plaintiffs have failed to state a claim upon which relief can be granted under 42 U.S.C. § 1983.

■■■ Count IV of the complaint also asserts defendants' conduct effectively denied plaintiffs equal protection of the law. The claim is premised upon one conclusory allegation, consisting merely of subjective characterizations and lacking even a mini-mal statement of facts. Such claim is clearly defective as a matter of law. *Dewey v. University of New Hampshire,* 694 F.2d 1, 3 (1st Cir.1982). Furthermore, the absence of the requisite causal connection between defendants' alleged misconduct and plaintiffs' injuries is no less fatal to the equal protection claim than to the due process claim, discussed *supra.* *Carlson v. Conklin, supra,* 813 F.2d at 772. Accordingly, plaintiffs' count IV equal protection claim is also subject to dismissal under Fed.R.Civ.P. 12(b)(6).

In summary, the Court has determined that the claims embodied in all four counts of the complaint are facially defective. Defendants are entitled to dismissal of the complaint in its entirety, under Fed.R. Civ.P. 12(b)(6). An order consistent with this opinion shall issue forthwith.

---

**3.** Moreover, there is persuasive authority for the proposition that even such a causal connection is insufficient to support a due process claim under § 1983. See *Gilmore v. Buckley,* 787 F.2d 714, 722 (1st Cir.1986), where the court required a showing that government officials had, through *affirmative actions,* either (a) rendered the plaintiff victim vulnerable or (b) facilitated, instigated or condoned the offender's wrongful conduct. The court held this sort of direct causal connection is essential to recognition of a special relationship implicating the fourteenth amendment. Similar reasoning is implicit in the Sixth Circuit's majority opinion in *Nishiyama v. Dickson County, Tennessee,* 814 F.2d 277 (6th Cir.1987).