IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 15, 2010 Session

# MELISSA A. STEWART ET AL. V. A.K.M. FAKHRUDDIN, M.D. ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 08C-1520     Thomas W. Brothers, Judge**

---

**No. M2009-02010-COA-R3-CV - Filed May 26, 2010**

---

A man receiving outpatient treatment from a psychiatrist shot and killed his wife and himself. Patient's daughter filed wrongful death actions on behalf of her mother and her father and a negligence action on her own behalf. The trial court granted summary judgment with respect to the wrongful death claim on behalf of the mother and the individual claim of the daughter. The wrongful death claim on behalf of father was voluntarily dismissed. We have concluded that Tenn. Code Ann. § 33-3-206 does not apply in this case and that the trial court erred in granting summary judgment with respect to mother's and daughter's negligence claims.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Mathew R. Zenner and Malcolm L. McCune, Nashville, Tennessee, for the appellant, Melissa A. Stewart.

Garrett E. Asher and Jennifer G. Rowlett, Nashville, Tennessee, for the appellees, A.K.M. Fakhruddin, M.D. and Madison Psychiatric Associates, P.C.

## OPINION

FACTUAL AND PROCEDURAL BACKGROUND

The facts pertinent to this appeal are largely undisputed. James Stewart was a patient of Dr. A.K.M. Fakhruddin, a psychiatrist, from May 1989 until Mr. Stewart's death in September 2005. After an incident of domestic violence, Mr. Stewart received inpatient

psychiatric treatment in June 2001, and Dr. Fakhruddin changed his diagnosis from major depression to bipolar disorder. Dr. Fakhruddin thereafter saw Mr. Stewart regularly on an outpatient basis for medication management and psychotherapy. His last office visit with Mr. Stewart was on August 23, 2005.

On September 9, 2005, Mr. Stewart deliberately shot his wife, Deloris Stewart, and then shot himself. Both died of their injuries. Melissa Stewart, the adult daughter of Deloris and James Stewart, was present in the home at the time of the shooting. Deloris Stewart was holding Melissa's infant child when Mr. Stewart shot her.

Melissa Stewart filed suit against Dr. Fakhruddin and Madison Psychiatric Associates on May 14, 2008. She alleged that Dr. Fakhruddin "negligently failed to provide reasonable care to his patient, James Stewart, and negligently failed to protect Mr. Stewart's family from harm." Ms. Stewart specifically alleged that Dr. Fakhruddin was negligent in the following ways:

A. Dr. Fakhruddin carelessly and negligently disregarded, or negligently failed to recognize his patient's propensity for violent acts directed toward his immediate family;

B. Dr. Fakhruddin carelessly and negligently failed to assess Mr. Stewart on an ongoing basis for suicidality and/or homicidality;

C. Dr. Fakhruddin carelessly and negligently failed to develop a safety plan that would afford a reasonable degree of protection for Deloris Stewart and Melissa Stewart;

D. Dr. Fakhruddin carelessly and negligently disregarded the fact known to him concerning his patient's access to firearms;

E. Dr. Fakhruddin carelessly and negligently failed to adequately evaluate Mr. Stewart in forming his diagnostic impressions;

F. Dr. Fakhruddin carelessly and negligently failed to properly treat Mr. Stewart with medications appropriate for his severe and persistent psychiatric conditions;

G. Dr. Fakhruddin carelessly and negligently failed to protect James Stewart, Deloris Stewart, and Melissa Stewart, from avoidable and clearly foreseeable harm;

H.  Dr. Fakhruddin carelessly and negligently mismanaged the care and treatment provided to James Stewart during the entire period of his service as his physician.

The complaint also sets forth claims for reckless infliction of emotional distress and negligent infliction of emotional distress on behalf of Melissa Stewart.  Dr. Fakhruddin and Madison Psychiatric Associates filed a joint answer denying liability and asserting affirmative defenses, including immunity from suit pursuant to Tenn. Code Ann. § 33-3-209.

In December 2008, the appellees filed a motion for summary judgment along with supporting documents, including the affidavits of Dr. Fakhruddin and two other psychiatrists, Dr. George Corvin and Dr. Sid Alexander, stating that Dr. Fakhruddin complied with the applicable standard of acceptable practice in his treatment of Mr. Stewart.  The appellees also submitted records documenting Deloris Stewart's contacts with two domestic violence shelters and portions of the deposition testimony of Melissa Stewart to support their position that Dr. Fakhruddin had no duty to warn Deloris or Melissa Stewart because they both knew of Mr. Stewart's violent tendencies.

Melissa Stewart opposed the appellees' motion for summary judgment and submitted the affidavit of Dr. Keith Caruso, a psychiatrist; the affidavit of Cammie Perkins, cousin of Melissa Stewart; and portions of the deposition testimony of Melissa Stewart and Dr. Fakhruddin.  Cammie Perkins stated in her affidavit that Deloris Stewart stayed at her home for three or four weeks in July of 2005 and told Ms. Perkins that she intended to get a divorce because she was "tired of the fighting and abuse."  According to Ms. Perkins, Deloris Stewart also told her that the medications prescribed by Dr. Fakhruddin for Mr. Stewart were not making him stable, "that he was abusing his Xanax pills, and that the treatment he was receiving was not working."  Ms. Perkins witnessed Deloris Stewart calling Dr. Fakhruddin several times "to tell him how James was acting, and to tell him they were getting a divorce."  Deloris Stewart told Ms. Perkins that "she felt as though [Dr. Fakhruddin] was not listening to her and that he was not returning her telephone calls."  Deloris Stewart also stated to Ms. Perkins that she had gone to see Dr. Fakhruddin "on a couple of occasions."

In his affidavit, Dr. Caruso, a psychiatrist with a private practice in Brentwood, Tennessee,[1] discussed and identified deficiencies in Dr. Fakhruddin's treatment of Mr. Stewart.  Dr. Fakhruddin knew of two incidents, one in June 2001 and another in November 2002, in which Mr. Stewart behaved in a violent or threatening manner toward Deloris or Melissa Stewart.  Dr. Fakhruddin called a family meeting with Deloris and Melissa Stewart after the first violent incident, but Melissa did not attend.  Although Dr. Fakhruddin called

---

[1]The appellees have not challenged Dr. Caruso's qualifications to testify as an expert in this case.

for another family meeting after the second incident, such a meeting never occurred. Dr. Caruso criticized Dr. Fakhruddin for failing to be more suspicious of Mr. Stewart's assertions that things were going better at home and for failing to be more concerned about the presence of firearms in the home. The affidavit further states:

26. Dr. Fakhruddin should have returned the calls from Deloris Stewart. If Ms. Stewart made the calls and Dr. Fakhruddin's staff did not relay the messages, Dr. Fakhruddin is still responsible for ensuring that his office staff faithfully transmitted phone messages to him. Had Dr. Fakhruddin returned Deloris Stewart's calls, he would have learned that she was leaving him and that she was fearful of violence. Had he followed up on the earlier family meeting in 2003, he could have had even more information about Mr. Stewart's potential for violence toward Deloris Stewart and toward himself.

27. Dr. Fakhruddin knew or should have known that dissolution of his family would likely be a devastating blow for Mr. Stewart based on the number of times that Mr. Stewart had talked about his daughter from a prior marriage. Dr. Fakhruddin should have been more vigilant to the potential for Mr. Stewart to decompensate into violence of [sic] the potential dissolution of his second marriage. Had he gathered the necessary data from the proposed 2003 family meeting and returned Deloris Stewart's 2005 calls, he could have warned Ms. Stewart not to return home when she did. He could have taken other steps to intervene, such as psychiatric admission of Mr. Stewart and other medication adjustments.

28. Dr. Fakhruddin did not perform adequate violence risk assessment of Mr. Stewart. He apparently also did not take all calls from Ms. Stewart, which could have conveyed even more information regarding Mr. Stewart's potential for violence. The standard of care for the treatment of a patient with Mr. Stewart's volatility and potential for violence would mandate speaking with a family member, particularly in light of the knowledge that the patient had threatened suicide and harm to family members in the past, particularly in the setting of conflict in the family. While Dr. Fakhruddin stated that he was unaware of Mr. Stewart's history of and propensity for domestic violence, he is responsible for his failure to gather that data by failing to pursue the 2003 family meeting or to return Ms. Stewart's 2005 calls.

29. . . . Dr. Fakhruddin's office visit note with Mr. Stewart on August 23, 2005 indicated that Dr. Fakhruddin knew that there was conflict between Mr. Stewart and his wife.

30. As his psychiatrist, Dr. Fakhruddin had a duty to protect Mr. Stewart's family from his violence. As his psychiatrist, Dr. Fakhruddin had a duty to Mr. Stewart to protect him from committing suicide. Dr. Fakhruddin was derelict in those duties, failing to adequately assess Mr. Stewart's potential for violence towards his family and suicide through his failure to adequately gather the data that would have informed Dr. Fakhruddin more fully of Mr. Stewart's actual condition. Dr. Fakhruddin was derelict in failing to take steps to protect his patient Mr. Stewart and Mr. Stewart's family, such as psychiatric admission, medication adjustments, warning Deloris Stewart of Mr. Stewart's risk of violence and insurance that firearms had been removed from Mr. Stewart's access. These derelictions of these duties caused damages–Ms. Stewart's homicide and Mr. Stewart's suicide.

In March 2009, the trial court heard arguments on the appellees' motion for summary judgment and granted the motion with respect to the causes of action for the wrongful death of Deloris Stewart and for the negligent infliction of emotional distress as to Melissa Stewart. The court denied the motion for summary judgment as to the wrongful death claim on behalf of James Stewart. The court subsequently denied the appellant's motion to alter or amend. On September 15, 2009, the trial court entered an order granting voluntary dismissal of Mr. Stewart's wrongful death claim.

On appeal, Melissa Stewart argues that the trial court erred in granting summary judgment on her claims on behalf of herself and her mother.

STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn. 2003). We consider the evidence in the light most favorable to the nonmoving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall,* 847 S.W.2d 208, 211 (Tenn. 1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.; Rutherford v. Polar Tank Trailer, Inc.,* 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.,* 270 S.W.3d 1, 8-9 (Tenn. 2008).

ANALYSIS

The appellant asserts that the trial court erred in granting summary judgment because the affidavit of Dr. Caruso established genuine issues of material fact concerning the elements necessary for the causes of action on behalf of Melissa and Deloris Stewart.[2] The appellees argue (1) that, pursuant to Tenn. Code Ann. § 33-3-206, there is no duty to warn in this case; (2) that, even without Tenn. Code Ann. § 33-3-206, there would be no duty to warn because Melissa and Deloris Stewart were already aware of Mr. Stewart's violent tendencies; (3) that Dr. Caruso's affidavit is insufficient to create a genuine issue of material fact on the element of causation.

We must begin by examining the effect of Tenn. Code Ann. § 33-3-206, which states:

IF AND ONLY IF

(1) a service recipient has communicated to a qualified mental health professional[3] or behavior analyst an actual threat of bodily harm against a clearly identified victim, AND

(2) the professional, using the reasonable skill, knowledge, and care ordinarily possessed and exercised by the professional's specialty under similar circumstances, has determined or reasonably should have determined that the service recipient has the apparent ability to commit such an act and is likely to carry out the threat unless prevented from doing so,
THEN

(3) the professional shall take reasonable care to predict, warn of, or take precautions to protect the identified victim from the service recipient's violent behavior.

Tenn. Code Ann. § 33-3-207 provides that the duty imposed by Tenn. Code Ann. § 33-3-206 may be discharged by various courses of actions, including warning the identified victim, voluntary or involuntary admission of the patient to a hospital, or "a course of action

---

[2]Contrary to the appellant's characterization, these claims are for negligence, not medical malpractice, since they are not on behalf of the patient. *See Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993). However, like a medical malpractice claim, the appellants' claims require expert medical proof.

[3]Pursuant to Tenn. Code Ann. § 33-1-101(20), a "qualified mental health professional" includes a psychiatrist.

consistent with current professional standards that will discharge the duty." Tenn. Code Ann. § 33-3-209 gives a professional who has satisfied his or her duty under § 33-3-206 immunity from any cause of action for "not predicting, warning of, or taking precautions to provide protection from violent behavior" by the patient.

The appellees argue that Tenn. Code Ann. § 33-3-206 precludes any imposition of a duty upon Dr. Fakhruddin to warn Deloris and Melissa Stewart of the risk of bodily harm presented by Mr. Stewart. There is no evidence to establish that Mr. Stewart communicated to Dr. Fakhruddin any threat to harm Deloris or Melissa Stewart. According to the appellees' reasoning, in the absence of any actual communicated threat, Dr. Fakhruddin had no duty to protect Deloris or Melissa Stewart. We respectfully disagree with this interpretation of the statute.

When interpreting a statute, the court is to ascertain the intent of the legislature from the natural and ordinary meaning of the language used and in the context of the entire statute. *Cohen v. Cohen*, 937 S.W.2d 823, 827 (Tenn. 1996). We are to give effect to every word and assume that the legislature deliberately chose to use these words. *Id.* at 827-28; *Tenn. Manufactured Hous. Ass'n v. Metro. Gov't of Nashville & Davidson County*, 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990). A statute in derogation of the common law is to be strictly construed. *Hunter v. Ura*, 163 S.W.3d 686, 711 (Tenn. 2005).

According to the plain language of the statute, the duty created by Tenn. Code Ann. § 33-3-206 applies "if and only if" a service recipient has communicated to a mental health professional "an actual threat of bodily harm against a clearly identified victim." When such a threat is made and the mental health professional determines or should determine that the service recipient is likely to carry out the threat, the mental health professional has a duty to take action to protect the identified victim. Thus, the statutory duty to protect arises only in the context of an actual threat of bodily harm to a specific victim. We do not, however, interpret the statute as eliminating any other type of duty that a psychiatrist might have to a non-patient as established by common law. *See Powell v. Catholic Med. Ctr.,* 749 A.2d 301, 304-05 (N.H. 2000) (statute requiring physician to warn reasonably identifiable victim when patient communicated serious threat of violence applied only in limited circumstances described in statute and did not preempt claims based on a common law duty to warn of a potentially violent patient).

In *Turner v. Jordan*, 957 S.W.2d 815 (Tenn. 1997), our Supreme Court held that "a duty of care may exist where a psychiatrist, in accordance with professional standards, knows or reasonably should know that a patient poses an unreasonable risk of harm to a foreseeable,

readily identifiable third person."[4]  *Id.* at 820-21.  The appellant in *Turner* was a hospital nurse who was attacked by a hospitalized mentally ill patient.  *Id.* at 816.  The nurse sued the patient's attending psychiatrist, arguing that her injuries were caused by the psychiatrist's failure to use reasonable care in his treatment of the patient.  *Id.* at 817.  In its discussion as to whether the psychiatrist owed a duty of care to the nurse, the court reiterated the following principles:

> Although we have generally held that a person has a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others, *Doe v. Linder Construction Co.*, 845 S.W.2d 173, 178 (Tenn. 1992), this duty does not extend to the protection of others from the dangerous conduct of third persons *unless* the defendant "stands in some special relationship to either the person who is the source of the danger, or to the person who is foreseeably at risk from the danger."  *Bradshaw [v. Daniel*, 854 S.W.2d 865, 871 (Tenn. 1993]*, citing Restatement (Second) of Torts § 315 (1964).[5]  As we said in *Bradshaw*, "while an actor is always bound to prevent his acts from creating an unreasonable risk to others, he is under the affirmative duty to act to prevent another from sustaining harm only when certain socially recognized relations exist which constitute the basis for such legal duty."  854 S.W.2d at 871.

*Id.* at 818.  The court cited its decision in *Bradshaw v. Daniel*, in which a patient's family members contracted Rocky Mountain spotted fever, for the proposition that the physician-patient relationship is a special relationship that imposes an affirmative duty on a physician "to warn identifiable persons in the patient's family against foreseeable risks related to the patient's illness."  *Id.* at 819 (citing *Bradshaw*, 854 S.W.2d at 872).

---

[4]Statutory provisions similar to those now found at Tenn. Code Ann. § 33-3-206 were in effect at the time the Supreme Court decided *Turner*, but the provisions did not apply to psychiatrists.  *See* 1989 TENN. PUB. ACTS ch. 549.

[5]Section 315 of the RESTATEMENT (SECOND) OF TORTS provides:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

The court in *Turner* reasoned that the principles applied in *Bradshaw* and other Tennessee cases[6] likewise applied with respect to a psychiatrist's duty to protect a third party from a patient's violent acts. *Id.* The court looked to cases from other states[7] and balanced the factors used in determining whether a duty exists: "the foreseeability and severity of potential harm; the nature of the defendant's conduct; and the availability, safety and effectiveness of alternatives." *Id.* at 820 (citing *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). In concluding that the facts of the case before it were sufficient to create a duty of care, the *Turner* court noted the psychiatrist's ability to control the patient in the inpatient psychiatric ward. *Id.*

The appellees in the present case attempt to distinguish *Turner* on the basis that, unlike the nurse in *Turner*, Mr. Stewart was receiving only outpatient treatment from Dr. Fakhruddin. They point to the following footnote in the *Turner* opinion in support of this argument:

> The defendant relies on cases which, in finding no duty existed, emphasized the patient's outpatient status and/or the absence of a threat to a specific victim. *King v. Smith*, 539 So. 2d 262 (Ala. 1989) (emphasizing therapist's minimum control over a voluntary outpatient); *see also Brady v. Hopper*, 751 F.2d 329 (10th Cir. 1984) (unknown victim); *Hasenei v. United States*, 541 F. Supp. 999 (D. Md. 1982) (insufficient control over outpatient); *Burchfield v. United States*, 750 F. Supp. 1312 (S.D. Miss. 1990) (voluntary patient; unforeseeable victim). Like the majority of cases, however, we view these factors as relevant to but not dispositive of the determination.

*Id.* at 820, n.6. This language does not, however, preclude a duty with respect to victims of violence by outpatients. Rather, the court found the absence of a specific threat and outpatient status to be factors to be considered in determining whether a duty exists.

---

[6]The court also cited *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 430 (Tenn. 1994), a case in which the court held that a physician had no duty to his patient's adult grandson because it was not reasonably foreseeable that the grandson would take medications prescribed for his grandmother, and *Wharton Transport Corp. v. Bridges*, 606 S.W.2d 521, 526 (Tenn. 1980), a case in which the court held that a physician owed a duty to a third party injured by a truck driver who was negligently examined and certified by the physician.

[7]As the court noted in *Turner*, cases analyzing a psychiatrist's duty to third parties threatened by a patient rely on the groundbreaking case of *Tarasoff v. Regents of University of California*, 551 P.2d 334 (Cal. 1976). *See generally* John C. Williams, Annotation, *Liability of One Treating Mentally Afflicted Patient for Failure to Warn or Protect Third Persons Threatened by Patient*, 83 A.L.R3D 1201 (1978).

We emphasize that the appellant's negligence allegations in the present case are not premised solely on a duty to warn. Rather, Melissa Stewart asserts that Dr. Fakhruddin's failure to treat her father according to the accepted standards of psychiatric care resulted in the death of her mother and her own emotional injuries. The drafters of the RESTATEMENT (THIRD) OF TORTS have noted a distinction between a duty of care arising out of § 315 of the RESTATEMENT (SECOND) OF TORTS, the section cited in *Turner* and *Bradshaw*, and a duty to use reasonable care in treatment. RESTATEMENT (THIRD) OF TORTS § 42 cmt. g (Tentative Draft No. 4, 2004); s*ee Estates of Morgan v. Fairfield Family Counseling Ctr.*, 673 N.E.2d 1311, 1328-29, 1332-33 (Ohio 1997) (psychotherapist who ceased prescribing medication to schizophrenic patient who harmed others may be subject to liability if removal of medications was contrary to applicable professional standard of care); *Bardoni v. Kim*, 390 N.W.2d 218, 222 (Mich. Ct. App. 1986) (recognizing distinction between liability based on negligent treatment and liability based on failure to protect from patient's violent conduct). In *Schuster v. Altenberg*, 424 N.W.2d 159, 161, 163 (Wis. 1988), a case cited in *Turner*, the court recognized a distinction between a claim of negligent diagnosis and treatment (that led to harm to family members) and a claim of failure to warn family members.

We conclude that Tenn. Code Ann. § 33-3-206 does not apply in this case and that the appellant's claims against Dr. Fakhruddin and Madison Psychiatric Associates should not have been dismissed on summary judgment. As we stated, the appellant's claims are not premised solely on a duty to warn, so the appellees' argument concerning the knowledge of Melissa and Deloris Stewart about Mr. Stewart's violent tendencies is not dispositive.

We reject the appellees' assertion that Dr. Caruso's affidavit does not create a genuine issue with regard to causation. After detailing the ways in which Dr. Fakhruddin had failed to properly treat Mr. Stewart and protect his family, Dr. Caruso stated: "These derelictions of these duties caused damages–Ms. Stewart's homicide and Mr. Stewart's suicide." We find Dr. Caruso's affidavit sufficient to create a genuine issue of material fact on the element of causation.

CONCLUSION

The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellees, Dr. Fakhruddin and Madison Psychiatric Associates, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

-10-